1    Jefferson A. McGee,
     Attorney Pro Se
2    8105 Cottonmill Circle
     Sacramento, California 95828
3    916-247-2413

**FILED**

APR 0 2 2014

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK



4

5

6

7              **IN THE UNITED STATES DISTRICT COURT**
               **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

9                                    **2 : 1 4 - CV - 0 8 2 3 JAM KJN PS**

10   JEFFERSON A. McGEE,            **Civil Action File No.**_____
           Plaintiff,
11

12   v.

13   STATE OF CALIFORNIA,           Complaint and Demand for Jury Trial
     CALIFORNIA GOVERNOR,           (Deprivation of Rights Secured by Title 42
14   CALIFORNIA ATTORNEY            USC §§1981, 1982, 2000a and Cal. Civil
     GENERAL,                       Code 51) Request for Attorney General
15   CALIFORNIA STATE SENATE,       Intervention, Damages, and Injunctive Relief.
     CALIFORNIA STATE ASSEMBLY,
16   EDMUND G. BROWN JR.,
     ARNOLD SCHWARZENEGGER,
17   GRAY DAVIS,
     PETE WILSON,
18   WILLIAM LOCKYEAR,
     DANIEL LUNGREN,
19   DARRELL STEINBERG,
     DONALD PERATA,
20   JOHN A. PEREZ,
     KAREN BASS,
21   FABIAN NUNEZ,
     COUNTY OF SACRAMENTO,
22   SACRAMENTO COUNTY BOARD OF SUPERVISORS,
     JAN SCULLY,
23   COUNTY OF SACRAMENTO SHERIFF,
     LOU BLANAS,
24   GLEN CRAIG,
     JOHN MCGUINESS,
25   DON NOTOLI,
     ROBERT A. MCGLASHAN,

26

27

28

1  | SUSAN PETERS,
   | JIMMIE YEE,
2  | ILLA COLLINS,
   | RODGER DICKINSON,
3  | CITY OF SACRAMENTO,
4  | SACRAMENTO COUNTY COUNCIL,
   | CITY OF SACRAMENTO POLICE DEPARTMENT,
5  | KEVIN JOHNSON,
   | ANGELIQUE ASHBY,
6  | ALLEN WARREN,
7  | STEVE HANSEN,
   | DARRELL FONG,
8  | BONNIE PANNELL,
   | ROBBIE WATERS,
9  | LAURA HAMMOND,
10 | RAY TRETHWAY,
   | ROBERT FONG,
11 | STEVE COHEN,
   | SANDY SHEEDY,
12 | DAVE JONES,
13 | CITY OF ELK GROVE,
   | JAMES COOPER,
14 | MIKE LEARY,
   | SOPHIA SHERMAN,
15 | DAN BRIGGS,
16 | SAM SOMERD Jr.,
   | RICK SOARES,
17 | ANTHONY MANZANETTI,
   | CITY OF CITRUS HEIGHTS,
18 | ELK GROVE UNIFIED SCHOOL DISTRICT,
19 | SOUTHGATE RECREATION AND PARK DISTRICT,
   | LITTLE LEAGUE BASEBALL INC.,
20 | FLORIN LITTLE LEAGUE BASEBALL INC.,
   | FORD MOTOR CREDIT,
21 | DOUBLETREE HOTEL,
22 | THOMAS HOGAN,
   | RANDOLF CREEGER & CHALFANT LLP,
23 | MMDD SACRAMENTO PROJECT A GENERAL PARTNERSHIP,
   | LONGYEAR, O'DEA & LAVRA LLP,
24 | GURNEY & DANIELS,
25 | JERRY DUNCAN,
   | SACRAMENTO DELTA PROPERTY MANAGEMENT INC.,
26 | ASSET INVESTMENT MANAGERS INC.,
   | and LAW OFFICES OF GARY L. LINK,
27 |                    Defendants,

28 |

II
McGee v. CA State Complaint

1

2

## **TABLE OF CONTENTS**

3

Introduction …………………………………………………………………………..1

Statement of Jurisdiction …………………………………………………………....1

Parties ……………………………………………………………………………..…1

Statement of Facts …………………………………………………………………...3

      California State Government……………………………………………………4

      *McGee v. Craig et. al.* No. 2:98-cv-1026-FCD-PAN …….…..…………………4

      *People v. McGee et. al.* No. 2:98-mc-00321-DFL-PAN…………………………16

      *McGee v. Hildebrand et. al.* No. 2:02-cv-01578…………… :……………………24

      *McGee v. People* No. 2:04-cv-00283-GEB-KJM…………………………………25

      *McGee v. Schwarzenegger et. al.* No. 2:04-cv-02598-LKK-PAN……...…………31

      *McGee v. CA State Senate et. al.* No. 2:05-cv-02632-GEB-EFB …….…………..41

      *McGee v. MMDD et. al.* No. 2:05-cv-0339-WBS-DAD…………………………..42

      *McGee v. State of California et. al.* No. 2:09-0740-GEB-EFB……………………46

      *McGee et. al. v. Seagraves et. al.* No. 2:05-cv-00485-MCE-GGH………………49

      *McGee v. Attorney General of California* No. 2:11-cv-02554-CMK………………51

      Allegation in support of Method of carrying out the Policy and the Conspiracy…..56

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Allegation of Damages.............................................................................62

Causes of Action ....................................................................................64

    Count One ........................................................................................64

    Count Two .......................................................................................64

    Count Three .....................................................................................65

    Count Four .......................................................................................65

    Count Five .......................................................................................65

    Count Six .........................................................................................66

    Count Seven .....................................................................................66

    County Eight ....................................................................................67

PRAYER ..............................................................................................67

VERIFICATION ....................................................................................V

1

2

**INTRODUCTION**

Plaintiff alleges:

3

1.      Plaintiff is challenging the policy of the State of California, County of Sacramento,  City of

4

5

Sacramento, City of Elk Grove, City of Citrus Heights, Elk Grove Unified School District, and

6

Southgate Recreation and Park District of Discriminating Against African Americans in Law

7

Enforcement Programs and Activities, and alleges that plaintiff is being denied adequate law

8

enforcement protections, unequal to that provided white citizens, that government officials and

9

some private citizens have participated in a vast racially motivated conspiracy to violate

10

plaintiff's and other persons rights, including conspiring, or aiding or inciting others, to commit

11

12

against plaintiff and other persons: attempted murder; kidnap; torture; assault with a deadly

13

weapon; assault; battery; breaking and entering into plaintiff's property; obstruction of justice in

14

the federal and state courts; perjury; forgery; unlawful sexual conduct; and unlawful search  and

15

seizure of plaintiff's property causing plaintiff to lose income. Plaintiff is requesting this court

16

grant his request to allow the United States Attorney General intervene in the case and further

17

grant him monetary and injunctive relief.

18

19

**STATEMENT OF JURISDICTION**

20

2.      Jurisdiction of this Court is evoked under the provisions of Title 28 USC §§ 1331, 1343(3),

21

1367(a), and Title 42 USC §§ 1981, 1982, 1983, 1985, 1986, 1988, and 2000.

22

**PARTIES**

23

3.      At all times mentioned in this complaint plaintiff is Jefferson Arnold McGee (McGee).

24

25

Plaintiff is African American residing in County of Sacramento, State of California, and is a

26

member of a protected class pursuant to federal civil rights statutes.

27

28

4. Defendants: the State of California is one of the fifty member states of the United States of America, and in doing all of the actions alleged in the complaint acted through her officials, municipalities, agencies, and people;

5. Pete Wilson, Gray Davis, Arnold Schwarzenegger, Edmund G. Brown Jr. are Governors of the State of California;

6. Daniel Lungren, William Lockyear, and Edmund G. Brown Jr. are Attorney Generals of the State of California;

7. CA State Senate, and the CA State Assembly are the California Legislature;

8. Darrell Steinberg, Donald Perata, Fabian Nunez, Karen Bass and John A. Perez are members of the California Legislature and acting as President Pro Tem of the CA State Senate or Speaker of the CA State Assembly;

9. County of Sacramento (County), City of Sacramento (City), City of Elk Grove (Elk Grove), City of Citrus Heights (Citrus Heights), Elk Grove Unified School District (EGUSD), and Southgate Recreation and Park District (SRPD) are municipalities or political subdivisions of the State of California;

10. Glen Craig, Lou Blanas, and John McGuiness are Sacramento County Sheriff;

11. Jan Scully is District Attorney of Sacramento County (County DA);

12. Don Notoli, Susan Peters, Robert A. McGlashan, Jimmie Yee, Illa Collins, and Rodger Dickinson are members of the Sacramento County Board of Supervisors;

13. James Cooper, Mike Leary, Sophia Sherman, Dan Briggs, Rick Soares, are members of the Elk Grove City Council or are deputies of County Sheriff's Department;

14. Kevin Johnson, Angelique Ashby, Allen Warren, Steve Hansen, Darrell Fong, Steven Cohn, Kevin McCarthy, Heather Fargo, Bonnie Pannell, Robbie Waters, Laura Hammond, Ray

1    Trethway, Robert Fong, Sandy Sheedy, Jimmie Yee, Dave Jones are members of the Sacramento

2    City Council and Sam Somer Jr. is Chief of Police;

3    15.    Little League Baseball Inc. (LLB), Florin Little League Baseball Inc. (FLLB), Doubletree

4    Hotel, Longyear O'Dea and Lavra, Randolf Creeger and Chalfant LLP., Law Offices of Gary L.

5
     Link a Professional Law Corporation, Gurnee & Daniels LLP, MMDD Sacramento Project
6

7    (MMDD), Sacramento Delta Property Management Inc., Asset Investment Managers Inc.,

8    Thomas Hogan are corporations, partnerships or sole proprietors doing business in the County;

9    16.    Each defendant listed above is being sued jointly, severely, and in their official and unofficial

10   capacities.

11
     17.    Each defendant listed above has used law enforcement programs and activities receiving
12

13   financial assistance from the United States Government to discriminate against plaintiff on the

14   grounds of his race and solely on account that plaintiff is African American.

15                                   **STATEMENT OF FACTS**

16                                            **FACTS**

17
     18.    All the wrongs complained of in this complaint were committed against plaintiff pursuant
18

19   defendant's policy of "Discriminating Against African American in Law Enforcement Programs

20   and Activities," (the Policy) and for the purpose of implementing, maintaining, promulgating, and

21   executing the Policy.

22   19.    Each defendant named in this complaint was acting under the color, statutes, ordinances,

23
     usage's and customs of the laws of the State of California, and in furtherance of a vast racially
24

25   motivated conspiracy to violate plaintiff rights secured by the United States Constitution and Title

26   42 U.S.C. §§ 1981, 1982, 2000a, and California Civ. Code 51.7, when they committed the wrong

27   set out below (the Conspiracy).

28

                                            3
                               *McGee v. CA State Complaint*

20.    Defendant's policy and conspiracy are founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy. Plaintiff has been injured by the Policy by over two hundred different persons in the past 32 years. The permanent and well settled policy and the Conspiracy as it pertains to plaintiff are detailed below.

**California State Government**

21.    "The Supreme executive power of the State of California is vested in the governor. The governor shall see that the law is faithfully executed. Also, the governor has a statutory duty to supervise the official conduct of all executive and ministerial offices."

22.    "The Attorney General of California has a statutory duty that requires [she] have direct supervision over the sheriffs and district attorneys of the several counties of the State of California and whenever [she] deems it necessary in the public interest [she] shall direct the activities of any sheriff or district attorney."

23.    The California Department of Fair Employment and Housing (CDFEH) receives and investigates complaints of violence and intimidation by threat of violence because race. The Department is obligated to make prompt investigations of any complaint alleging facts sufficient to constitute a violation.

*McGee et. al., v. Craig et. al. 2:98-1026-FCD-PAN*

24.    From December 15, 1993 to present, County, County Board of Supervisors, Don Nottoli, Susan Peters, Roberta McGashan, Roger Dickinson, Illa Collins, Jimmy Yee, Glen Craig, Lou Blanas, John McGuiness, and Jan Scully have adopted, implemented, maintained, promulgated, and executed the Policy pertaining to plaintiff and other persons, and committed wrongs against plaintiff in furtherance of the Conspiracy. The defendants' wrongs are set out below.

25. On December 15, 1993, plaintiff registered his son to participate in Little League Baseball Inc. and Florin Little League Baseball Inc. Plaintiff applied for a position as a manager. Chuck King, Al Smith, Eileen Maza, and other FLLB board members refused to allow plaintiff to manage a baseball team. King stated, "You are not the type of person we want managing in this league. We don't want you or your son here. Take your kid and play in Elk Grove."While King, Smith and Mazza were refusing to allow plaintiff to manage a FLLB team, white parents similarly situated to plaintiff were allowed to manage teams in FLLB. FLLB operates their youth sports program on premises owned and operated by Elk Grove Unified School District and Southgate Recreation and Park District.

26. On December 17, 1993, a disgruntled employee summoned the sheriff to McGee & Associates, a real estate business in Sacramento. Without cause the deputies who responded seized and search the business. When plaintiff accused the deputies of racism because he is black and the employee was white, one of the deputies threatened plaintiff. He called 911 for protection which was denied. Without a warrant or probable cause plaintiff was arrested and handcuffed for 30 minutes but then released without charges being filed.

27. In or around June 1994, plaintiff was elected to the board of directors of FLLB. Plaintiff complained about racist statements and derogatory statements made by King. King, Smith, Mazza, Sylvia Roberts, Billy Miles, Gordon Stevens, and Mike Crosby retaliated by excluding plaintiff from participating on FLLB board of directors, and used intimidation by threats of violence, and threats of arrest to prevent plaintiff from participating on the board of directors. FLLB's board of directors regularly meets on property owned by EGUSD and SRPD. At one meeting, King intimidated McGee by threats of violence and challenged plaintiff to meet him in the parking lot. The parties listed in this paragraph refused to allow plaintiff to manage a team in

the division his son was playing to punish plaintiff for objecting to derogatory comments made by king about African Americans and a handicapped board member.

28.   On February 22, 1995, deputy sheriff Twilling kicked in the door to McGee's office, assaulted McGee and destroyed McGee's property under the pretext he had a warrant.

29.   On May 10, 1995, Twilling went to McGee's business in his absence, demanded McGee call him, and if McGee did not, threatened to repeat the episode of February 22.

30.   In June 1995, plaintiff ran for a position on FLLB board of directors. The election was held at James Rutter Middle School part of the EGUSD. Smith, Crosby, King, Mazza, Roberts, Miles and Tony Flint refused to allow plaintiff to be a candidate or vote in the elections until a fee was paid. White members of FLLB were allowed to participate in the election without paying fees. Plaintiff paid the fee. After the voting was complete Flint refused to allow plaintiff and other members to be present for the vote count because Flint knew plaintiff had enough votes to be elected to the board. FLLB board never published the results of the election and excluded plaintiff from participating on FLLB board of directors.

31.   On February 7, 1996, Twilling stopped McGee in his car and harassed McGee by serving McGee with a notice to appear in court.

32.   On March 12, 1996, without a warrant Twilling served McGee with a "civil notice" to Dynasty Upholstery, an enterprise in which McGee had been a partner. Twilling left but later returned and blocked McGee's car in the back of the business. Twilling asked for McGee at the reception desk and when McGee refused Twilling threatened to arrest him. When Twilling left, the office door was locked behind him. Twilling then pounded on the doors and windows demanding entry and imprisoned McGee inside for one and one-half hours.

33.    On March 26, 1996, McGee filed a complaint with the California Department of Fair Employment and Housing setting forth the foregoing events. Deputy Denham called McGee to instruct him about respecting sheriff deputies, but McGee refused to listen. The sheriff closed its investigation and admonished McGee about California Penal Code §§148 (resisting police officers) and 148.6 (false report of police misconduct). Thus, the Governor, the sheriff and other defendants covered up the crimes committed against plaintiff.

34.    In June 1996, FLLB held elections for their board of directors at James Rutter Middle School. Plaintiff again ran for a position on the board. After the voting was completed plaintiff and other members requested the vote be tallied in front of the membership. Smith, Roberts, Dennis O'Flaherty, Michelle Miles, Crosby, Anne Johnson, Lorie Whitman, and Flint refused to tally the votes in front of the membership. Plaintiff was never informed of the official tally, and once again plaintiff was excluded from participating on FLLB board of directors. In June 1996, plaintiff received enough votes to be elected to FLLB the board of directors.

35.    On November 18, 1996, Villaflor was working at McGee & Associates when Twilling called McGee and told Villaflor "If Jeff knows what is best for him, he will call me back."

36.    Later on November 18 Twilling entered McGee & Associates and asked for McGee. When Villaflor told Twilling that McGee was not present, Twilling yelled, "You tell your boss he can't run from the law."

37.    On November 29, 1996, Twilling again called for McGee. When Villaflor said McGee was unavailable Twilling interrogated Villaflor and warned, "If Jeff knows what is best for him, he will call me." Villaflor hung up. Twilling called back and asked for Villaflor but he would not take the call. Twilling called a third time and told another employee that Twilling would arrest Villaflor if he hung up the phone again.

38.  On December 6, 1996, Twilling entered McGee & Associates and asked for McGee. Twilling left when told McGee was unavailable and the doors were locked behind him. Twilling then pounded on the door and kept McGee and Villaflor confined inside for three hours. From outside, Twilling called McGee & Associates and threatened Villaflor.

39.  On May 9, 1997, McGee went to the sheriff's department "to clear up any and all warrants that might be issued against his person," but was not arrested.

40.  On May 12, 1997, Twilling again entered McGee & Associates and asked for McGee. He was told McGee was not in. Twilling left a business card and a note for McGee that stated: "Jeff we have a warrant for your arrest! Please respond to this card or you will be arrested and held in Sacramento County Jail!!! Thank you" No arrest warrant in fact had been issued. Back in his vehicle, Twilling formed his fingers into a gun that he aimed at Thomas McGee's head.

41.  On May 13, 1997, Twilling again sought out McGee at his business. When Villaflor told Twilling McGee was not there, Twilling said, "I am loving this! I have a file this thick on everybody in the office." Twilling then went outside and copied down the license plate numbers of all employees.

42.  In June 1997, FLLB held elections at James Rutter Middle School. McGee attempted to run for the board of directors but Roberts refused to place him on the ballot until plaintiff paid a fee. Plaintiff paid the fee and was elected to the board. Robert Bartosh, Martin Andrews, Crosby, and O'Flaherty all white men and were not required to pay the same fee, but were allowed to be candidates.

43.  On June 12, 1997, Twilling again asked for McGee and was told he was not available. Twilling left and the doors were locked behind him. Deputy Huzar arrived and the two remained in front of the business interrogating visitors and imprisoning McGee and Villaflor. When Ruby

8
*McGee v. CA State Complaint*

McDowell returned from lunch, she told the deputies she had no keys. Twilling said, "You're lying to me," or "You better not be lying to me." And threatened to arrest McDowell causing her to flee.

44.    On July 6, 1997, McGee was coaching a Little League Baseball game at the Sacramento Army Depot when Twilling and another deputy arrested him without a warrant to retaliate against McGee for filing written complaints against the sheriff's department.

45.    On October 8, 1997, Twilling pounded on the door of McGee's home on Iris Crest Way, falsely imprisoning and terrorizing Julia McGee and her children. Twilling left a "threatening note" that stated "Julia please respond to this card or further action will be taken!!! Thank you."

46.    October 10, 1997, Twilling again returned to the McGee's home and again pounded on the door, terrorizing the McGee's, their children and house guests.

47.    On October 15, 1997, McGee sued Twilling in Sacramento County Superior Court (Superior Court). Judge Roland Candee denied McGee's request for a temporary restraining order but scheduled a hearing on October 31, 1997. On October 31, 1997, nine sheriff's deputies were present in the court to intimidate McGee not to testify freely and fully about Twilling's harassment of him. One, Glenn Powell, lunged at McGee without provocation saying, "Do you want some of me?" One deputy ordered McGee to sit in the back of the courtroom. When the hearing began, Powell interjected himself in the proceedings and influenced the judge to deny plaintiff a hearing and award $200 to the sheriff's department against McGee for legal fees. After the hearing McGee examined the court file and saw opposition papers, including Twilling's affidavit that McGee had never before seen.

48.    On October 15, 1997, plaintiff filed a "citizen's complaint" with the sheriff itemizing the harassment of him.

49. On October 31, 1997, Glenn Powell wrote a letter to McGee demanding payment of the $200 award and on December 1 the sheriff and Powell mailed a second letter meant to intimidate threatened and punish plaintiff.

50. On November 5, 1997, plaintiff received a letter from defendant Christine Hess of the internal affairs section of the sheriff's department. Hess advised that McGee's complaint has been found to lack merit and "indicated" that Hess and Powell conspired to deny plaintiff equal protection of the law.

51. On December 18, 1997, plaintiff was at his business when he noticed Twilling surveying the building. McGee dialed 911 because he feared Twilling would kill him because McGee had filed suit against Twilling.

52. Also, on December 18, Deputy Peterson entered McGee & Associates and told McGee that he was under investigation. Peterson told the employees not to call 911 again and said, "You should think of what type of guy [sic] you're working for."

53. Deputy Hutchinson arrived and asked what the problem was. McGee complained that Twilling had harassed him for two years. Hutchinson called his supervisor. McGee retired to his office to wait behind a sign that said 'authorized personnel only." Hutchinson followed without permission and searched the room.

54. On January 17, 1998, deputies Atkins and Goncalves stalked McGee and Ruby McDowell driving less than a car length behind their vehicle with their high beam lights on. The deputies finally stopped the car without cause or warrant. Deputy Atkins dragged McGee from the car and put him in the back of a patrol unit. Atkins chocked McGee and Goncalves assaulted Ruby McDowell. That is Gonclaves used intimidation and threats of violence and false imprisonment to

10
*McGee v. CA State Complaint*

1     place his hands on private areas of McDowell's body without her consent. No formal charges

2     were made against McGee or McDowell.

3     55.    On January 27, 1998, McGee and McDowell delivered to Barbra Osborne at the CDFEH

4     seven separate complaints of police harassment. Neither, Pete Wilson, Geraldine Reyes, Penny

5

6     Sandborn, Nancy Gutierrez, nor any one at CDFEH would accept the complaints, which McGee

7     then delivered to the California Department of Justice (CDOJ) but both the CDFEH and

8     defendant Lungren refused to protect McGee.

9     56.    As a direct result of Wilson and Lungren refusing and neglecting to see that the law was

10    faithfully executed pertaining to McGee, plaintiff was unable to timely handle his debt and was

11    forced to ask the United States Bankruptcy Court for protection from his creditors.

12

13    57.    On February 2, 1998, plaintiff filed an action in the United States Bankruptcy Court for the

14    Eastern District of California, case entitled *In re McGee* No. 97:98-1284-c-7.

15    58.    In the Conspiracy on February 11, 1998, March 3, 1998, and other dates Glen Craig, Lou

16    Blanas, Gary Cheris, Robert Ryan, Anthony Wright placed levees on plaintiff bank account and at

17    Stewart Title Company and renewed a judgment for the purpose of collecting a debt from McGee

18    while having actual knowledge the automatic stay and discharge of creditors entered in McGee's

19

20    bankruptcy action entitled *In re McGee* forbade any actions to collect those debts from McGee.

21    59.    The parties listed in the previous paragraph, then used fraud, perjury and deceit in Bankruptcy

22    Court to mislead the court from finding them in contempt. McGee appealed the denial of his

23    motion for contempt, but defendants obstructed justice in Superior Court and mislead the court

24    into issuing a warrant for plaintiff for the purpose of preventing McGee from perfecting his

25    appeal. The warrant was issued for plaintiff for failure to appear at a hearing although plaintiff

26    had not been given notice of the place or time of the hearing. Defendants used the warrant to

27

28

11
*McGee v. CA State Complaint*

1    cause plaintiff to flee California. McGee fled California because he feared for his life.

2    Defendant's actions prevented plaintiff from perfecting his appeal in the case entitled *McGee v.*

3    *County* No. 98-1456 in the Bankruptcy Appellate Panel for the Ninth Circuit.

4    60.    On February 16, 1998, unidentified deputy sheriff's stalked McGee and McDowell. McGee

5         called 911 to ask California Highway Patrol for assistance but the dispatcher told McGee that the

6

7         sheriff's department would be notified.

8    61.    On April 15, 1998, McGee and Villaflor attended a Florin Little League Baseball directors

9         meeting. O'Flaherty attempted to intimidate Villaflor into resigning from the board of directors

10

11        by threatening to send the sheriff to Villaflor's and McGee's homes.

12   62.    On April 22, 1998, McGee and Villaflor entered James Rutter Middle School to attend a Little

13        League Baseball board meeting. An unidentified uniformed deputy sheriff Doe 22 threatened to

14        arrest McGee and Villaflor if they did not cooperate with O'Flaherty and told McGee and

15        Villaflor they were no longer board members. McGee and Villaflor ordered the deputy to leave

16        the meeting. The deputy explained he was present "because Dennis O'Flaherty called me to keep

17        things under control." The deputy left the meeting to wait outside but told O'Flaherty "let me

18        know if you need me." O'Flaherty then attacked McGee.

19

20   63.    Later on April 22, 1998, while leaving McGee & Associates the deputy from the Little League

21        meeting blocked McGee's and Michael Labrada's access to their vehicles. The deputy called for

22        assistance. When another deputy arrived the two deputies arrested McGee without a warrant or

23        cause and took him to Sacramento County jail. They arrested Villaflor and Labrada and took

24        them to Rio Cosumnes Correctional facility. The deputies threatened to tow McDowell's car if

25        she did not leave the scene. On the way to jail deputies heckled McGee. One said, "I can arrest

26        and unrest you anytime I want. So I am a racist because I arrested you. Sell me a house

27

28

1   now!"McGee was detained for ten hours without bond or a phone call. Villaflor and Labrada

2   were detained for about five hours without a phone call.

3   64.   Sheriff Glen Craig then prepared a false arrest report accusing McGee of being drunk in public

4   and gave the report to the Sacramento Bee. McClatchy Publishing and Julie Howard published

5

6   the false report, which contained many false statements without regard for the truth and without

7   inquiry about the relevant law.

8   65.   On April 29, 1998, McGee and Villaflor went to a community center to attend a Little League

9   board meeting. Doe 22 was present. McGee, Villaflor and Labrada were arrested about three

10  hours after the meeting.

11

12  66.   On April 30, 1998, McGee and Villaflor went to the sports arena of James Rutter to exercise

13  their first amendment rights. O'Flaherty, Crosby, and Andrews associated with Little League

14  ordered McGee and Villaflor to leave. Surrounded and fearing for their safety, McGee and

15  Villaflor began to leave the school grounds with O'Flaherty and others following while

16  threatening violence. O'Flaherty said, "Pussy! You guys are pussies!' and called Villaflor a

17  "Bitch!" O'Flaherty had to be restrained by others from attacking McGee and Villaflor. As they

18

19  ran O'Flaherty stated, "That's right you pussies! You better run!"

20  67.   On May 1, 1998, McGee went to Country Side Park part of SRPD to coach a Little League

21  Baseball game. Deputy Doe 22, O'Flaherty and three others threatened McGee with violence.

22  68.   On May 3, 1998, McGee who is black and Villaflor who is Asian went to Rutter Park to take

23  pictures with their baseball teams, but defendants Harvey Wood and Al Smith, representatives of

24  Little League prevented it by threatening to have McGee and Villaflor arrested if they entered the

25  park.

26

27

28

69.    On May 4, 1998, deputy Doe 22 O'Flaherty and some of the other Little League representatives went to Country Side Park looking for McGee. They told Little League members assembled there that if McGee showed up and entered the dugout he would be arrested.

70.    McGee went to James Rutter Middle School during the evening of May 4, 1998 to practice with his baseball team, but O'Flaherty and deputy Doe 22 prevented it.

71.    On May 30, 1998, McGee, and Villaflor attempted to discharge their duties as elected officials of Florin Little League baseball by cancelling a scheduled game at Sheldon High School sports arena, part of the Elk Grove Unified School District. McGee and Villaflor were arrested for violating Penal Code §626.7 by refusing to leave the school grounds to punish them for exercising their federal constitutional rights. The arresting officers were Gary Jones of Elk Grove Unified School District and deputy sheriff's Papineau, Karovnen, Nelson and Does 30. Doe 30 grabbed plaintiff's thumb and attempted to break it. O'Flaherty and Mike Crosby watched and supported Lee Thomas assault McGee with a deadly weapon, that is he hit six baseballs with an aluminum bat at McGee saying, "I will take his fucking head off!" and "If he gets hit that is his problem." McGee was dragged to a patrol car. McGee was also charged with resisting arrest in violation of Penal Code §148. McGee and Villaflor were taken to the county jail and detained for five hours. At the jail, the sheriff and Does 31 and 32 forced McGee and Villaflor to sign promises to appear in Municipal Court. McGee and Villaflor signed the promises to appear under duress because defendants said they would not release them if they did not.

72.    Thereafter, the Sheriff, Lou Balans, Does 31 and 43 other Doe defendants made a false crime report and sent it to the district attorney. When McGee and Villaflor appeared in court, the district attorney and 25 of her agents threatened them with time in jail. Also, the sheriff and Does 43 other Doe, McClatchy Publishing, Julie Howard, "conspired to further punish plaintiff by

14
*McGee v. CA State Complaint*

publishing false reports in the Sacramento Bee, Elk Grove/Laguna Neighbors," and Julie Howard published the report on June 4, 1998 with reckless disregard of the truth.

73. On June 7, 1998, McClatchy Publishing and Julie Howard republished the report under the title "Little League Baseball Brouhaha Update." At no other time had McClatchy Publishing and Julie Howard updated crime reports.

74. The crime report sent to the district attorney stated that both Villaflor and McGee were handcuffed without incidence but the district attorney charged them with resisting arrest to punish McGee and Villaflor for asserting their federal constitutional rights.

75. From June 3, 1998 until present, LLB, FLLB, O'Flaherty, Crosby, Bartosh, Contreras, Thomas, Wilson, Lungren, County, Blanas, Scully, Chandler, Alexander, Nelson and Karvonen have conspired to use intimidation by threats of violence, violence, threats of arrest, arrest, assault, and assault with a deadly weapon to prevent plaintiff from participating in LLB and FLLB on properties belonging to EGUSD and SRPD because of his race and solely on account that plaintiff is African American.

76. EGUSD and SRPD have actual knowledge LLB, FLLB, O'Flaherty, Crosby, Bartosh, Contreras, County, Blanas, Scully, Chandler, and Alexander had conspired to use intimidation, threats, violence, threats of arrest and arrest to prevent plaintiff from participating in LLB and FLLB on their school grounds, parks and sports arenas because of his race. EGUSD and SRPD had the power to prevent LLB and FLLB and their members from continuing to prevent plaintiff from participating in LLB and FLLB on their school grounds, sports arenas and parks because of his race but neglected and refused to prevent LLB, FLLB and their members from preventing plaintiff from participating in LLB and FLLB on their school grounds, sports arenas and parks.

77.     On June 3, 1998, McGee's, McDowell and Villaflor filed a 188-page complaint in the United States District Court for the Eastern District of California (District Court) the action was entitled *McGee et. al.; Craig et al. No. 2:98-mc-00125-GEB-DAD* converted to *(No.2:-cv-1026-FCD-PAN.)* The complaint named: Pete Wilson; Daniel Lungren; Jan Scully; Glen Craig; County; LLB; FLLB; EGUSD, and others as defendants. The compliant detailed a vast racially motivated conspiracy to violate plaintiff's federal constitutional rights.

*People of State CA.. v. McGee et. al. No. 2:98-mc-00321-DFL-PAN*

78.     After receiving the complaint Wilson and Lungren implemented and executed the Policy by refusing and neglecting to: (1) see that federal and state civil rights statutes were faithfully executed pertaining McGee in the State of California; (2) prevent County, Scully and other County officials from conspiring to commit more crimes against plaintiff; and (3) arrest and prosecute persons who had committed the crimes set out above.

79.     Wilson and Lungren then began to direct and supervise Craig, Scully, and CDOJ to file motions to dismiss in District Court in the matter of *McGee et. al. v. Craig*. Wilson and Lungren at the same time directed and supervised Scully to file and prosecute a malicious criminal action against McGee and Villaflor in Superior Court to punish McGee and Villaflor for asserting their civil rights. The action was entitled *People v. McGee et. al. No. 98M08748*.

80.     Plaintiff removed the criminal action *People v. McGee et. al.* from Superior Court to District Court. Scully, Sacramento Public Defender, Ramos, and Rosenfeld had McGee and Villaflor arrested to punish them for removing the action to District Court. The action was entitled *People v. McGee et. al.* No. 2:98-mc-00321-DFL-PAN.

81.     After receiving the complaint filed in the matter of *McGee v. Craig et. al.* Scully directed Kelly Chandler and Joseph Alexander to continue prosecuting case No. 98M08748. Lungren and

16
*McGee v. CA State Complaint*

Scully had actual knowledge that the United States Supreme Court decisions forbid Lungren and Scully from prosecuting McGee and Villaflor while being embroiled in civil litigation with them. Lungren and Scully prosecuted the misdemeanor action from May 30, 1998 until March 2000. Plaintiff and Villaflor were forced to make over 21 separate appearances in the course of 20 months in the misdemeanor action.

82.   After being served the Complaint County, Ryan and Wright hired Longyear, O'Dea and Lavra LLP, John Lavra, and Alison Sandman to aid them in covering up the crimes set forth above. The law firm, Lavra, and Sandman filed a motion to dismiss on behalf of County defendants in the matter of *McGee et. al., v. Craig et. al.* Lavara and Sandman obstructed the administration of justice in District Court by: (1) withholding the identity of Gonvcalves from District Court for a period of time; (2) refusing to follow the rules of discovery; and (3) conspiring with County defendants to use intimidation by threats of violence, threats of arrest and arrest to hinder and prevent plaintiff and others from filing papers in District Court. Lavara and Sandman also worked in concert with County, Scully, Craig and Blanas to use intimidation by threats of violence, torture, threats of arrest and arrest against plaintiff, his family, McDowell, Villaflor and other persons for the purpose of preventing plaintiff from responding to the motions to dismiss. The law firm also incited John Hildebrand to use fraud, perjury, and deceit in Superior/Municipal Court to evict McGee from his property at 9412 Elk Grove Florin Road.

83.   On July 15, 1998, Craig and Blanas sent five deputy sheriffs to McGee & Associates to intimidate McGee, McDowell and Villaflor who were parties and witnesses against him in the case of *McGee et. al., v. Craig et. al.* McGee and Villaflor protested by asking the five deputy sheriffs to move their cars from the parking lot of the shopping center where McGee & Associates is located. The officers arrested McGee and Villaflor. Deputy Ladas and deputy Baugh

swore out complaints against McGee and Villaflor. The deputies took McGee and Villaflor to the Sheriff's Community Service Center on East Stockton Blvd. The deputies kept McGee in the back of a police car with the windows and doors closed for one and one-half hours to punish him for filing a complaint against County, Craig, Blanas, Twilling, and others in District Court. The conditions in the back of the sheriff's car almost caused plaintiff's death. From there, McGee and Villaflor were taken to the county jail and detained for 17 hours during which time they were fed only once.

84.    On July 16, 1998, while detained at the jail, the sheriff and deputy Doe 31 and 32 forced McGee and Villaflor to sign a promise to appear in court, which they signed under duress.

85.    Wilson and Lungren had actual knowledge that Ladas, Baugh, and Goncalves kidnapped and tortured plaintiff and almost caused plaintiff's death and had the power to prevent Craig and Scully from continuing to intimidate plaintiff and from committing more crimes against plaintiff for the purpose of obstructing justice in District Court, but refused and neglected to prevent Scully and Blanas from conspiring to commit more crimes against plaintiff.

86.    In August 1998, Wilson, Lungren, Scully, Kelley Chandler, Craig, Deputies Nelson and Karvonen use unlawful tactics in Superior Court in the matter of *People v. McGee et. al.* to mislead the court into issuing a warrant for McGee and Villaflor for failure to appear at a hearing although plaintiff and Villaflor had not been given notice of the time or place of the hearing. Scully and Craig obtained a warrant then used the warrant to: make a series of searches and seizures of plaintiff's business and home; and questioned plaintiff's relatives, neighbors, and business associates. During one of the searches and seizures, Deputy Nelson and Karvonen who were parties against plaintiff in the case of *McGee et. al. v. Craig et. al.,* and witnesses against plaintiff in Superior Court No. 98M08748, entered into the McGee's residence without a warrant

or cause and intimidated his family causing his six year old daughter to vomit at the breakfast table. Plaintiff feared for his life because Craig and his deputies' criminal actions on July 15, 1998 almost killed him.

87.     Plaintiff fled California to prevent Craig, Scully, and other law enforcement officials from committing more crimes against him. Scully's and Craig's actions prevented plaintiff from timely filing papers in District Court in the case entitled *McGee et. al. v. Craig et. al.*, and in United States Bankruptcy Court, Appellate Panel for the Ninth Circuit in the case entitled *McGee v. County of Sacramento et. al.* No. 98-1456.

88.     On September 18, 1998, Wilson, Lungren, Scully, Craig, and Chandler sent Mike Leary and over 14 other deputies to surround McGee & Associates with approximately 14 County Sheriff patrol cars. County, Scully. Blanas, Chandler, and Alexander conspired to imprison McGee his customer, and employees inside the business. The Sheriff department attempted to enter into McGee & Associates and arrest McGee without a warrant or probable cause to deter McGee and other persons from further attending and testifying freely, fully and truthfully in District Court action *McGee et. al. v. Craig et. al.*

89.     McGee called the California Highway Patrol for protection, but the Highway Patrol refused to send officers to protect McGee. County, Scully, Blanas, Chandler, and Alexander were allowed to terrorize, intimidate, and falsely imprison McGee and others at McGee & Associates for some time.

90.     On September 30, 1998, deputies Geyser and five other Sheriff's deputies entered into McGee & Associates and searched and seized McGee & Associates without a warrant or cause. The deputies use intimidation to force Ruby McDowell into writing a contract between McGee and Gabriela Carter, and threaten to arrest McGee if he did not pay Carter money. The deputies stated

1    that they were aware of the fact that McGee had filed a suit in District Court against Wilson,

2    Lungren, Scully, Craig and others and warned McGee that if he did not want any more trouble he

3    had better cooperate with them.

4
5    91.    On October 2, 1998, Craig sent several sheriff deputies and patrol cars to the parking lot where

6    McGee & Associates is located and directed the deputies to intimidate McGee, McDowell and

7    Villflor by shining the lights of their patrol cars inside the business. The deputies shined their

8    lights into the business and terrorized and intimidated McGee, McDowell and Villaflor.

9    92.    Also, on October 15, 1998, at approximately 11:50 pm, Craig sent approximately 14 County

10    Sheriff patrol cars to McGee & Associates with orders to shine the lights of the patrol cars into

11
12    McGee & Associates to terrorize and intimidate McGee, McDowell, and Villaflor. Later that

13    night the officer arrived at McGee & Associates in 14 separate patrol cars and shined lights into

14    McGee & Associates terrorizing and intimidating McGee, McDowell and Villaflor.

15    93.    On December 22, 1998 at about 11:50 pm, Wilson, Lungren, Craig and Blanas sent sheriff

16    deputies to McGee & Associates to circle over the business in a helicopter and shine the

17
18    helicopter search lights inside the office. The sheriff deputies' went to McGee & Associates in a

19    helicopter. The deputies circled the business with the helicopter shining a light into the business

20    terrorizing McGee, McDowell and Villaflor. The actions of the deputies caused McGee,

21    McDowell and Villaflor to stop work and leave the office. As they left the office the helicopter

22    shined its search light on their persons. Also, as McGee, McDowell, and Villflor left the parking

23    lot in a green Ford pickup, the helicopter followed them down the street for about one half mile

24    shining their floodlight onto the pickup truck.

25
26    94.    January 4, 1999, Gray Davis became Governor of California; William Lockyear became

27    Attorney General of California. After becoming Governor of California and Attorney of

28

California, Davis and Lockyear adopted the Policy of Wilson and Lungren and refused and neglect to execute the federal and state civil rights statutes and California Penal Code in the State of California as they pertain to plaintiff. Davis and Lockyear refused to protect plaintiff from the Conspiracy. Davis and Lockyear also refused to arrest and prosecute the persons listed above although having actual knowledge that they committed crimes against McGee.

95. Davis and Lockyear had actual knowledge that Wilson, Lungren, Scully and Craig were embroiled in civil right litigation with McGee in District Court, and that Wilson, Lungren, Scully and Craig were using CDOJ, County District Attorney and County Sheriff deputies to intimidate McGee in to dropping his lawsuit. Davis and Lockyear had the power to: (1) prevent CDOJ, County DA, and Sheriff from using intimidation by threats of violence, threats of arrest, and arrest to intimidate plaintiff into dropping his suit in District Court; (2) arrest and prosecute the persons involved in the actions set forth above; (3) end the Policy and Conspiracy, but refused and neglected to do so.

96. On January 4, 1999, Lou Blanas became sheriff of County and continued implementing the policy of Craig as it pertained to McGee and continued his involvement in the Conspiracy.

97. Davis and Lockyear then directed and supervised CDOJ, Scully, and Blanas to continue to use intimidation by threats of violence to prevent McGee from continuing to prosecute the matter of *McGee et. al. v. Craig et. al.* in District Court, and to continue prosecuting the matter of *People v. McGee et. al.*

98. As a direct result of the actions of California State law enforcement official's as set forth above, plaintiff lost income and was unable to timely pay his rent on his business property to John Hildebrand. In March of 1999, incited by the conspiracy set out above, Hildebrand filed an unlawful detainer action against McGee for the purpose of evicting McGee from the property

known as 9412 Elk Grove Florin Road. The action was entitled *Hildebrand v. McGee No. C99109.* After McGee was served the summons and complaint he paid Hildebrand all of the rent that Hildebrand claimed McGee owed. Hildebrand accepted the payment. Hildebrand then worked in concert with Gaylord Mann, County, Sandman, Lavra to use fraud and perjury in Superior /Municipal Court to mislead the clerk into entering a default judgment and issuing a writ of possession in case No. C99109. County, Hildebrand, Mann, Lavara, Sandman, and others then worked in concert to execute the writ of possession. Plaintiff asked the Ninth Circuit Court of Appeals for relief. Alison Sandman filed documents in the court of appeal which indicated that she was working in concert with Hildebrand and County to evict plaintiff from the property. Hildebrand stopped attempting to execute the judgment.

99. On April 22, 1999, plaintiff and Villaflor appeared at a hearing in Superior Court in case No. 98M08748. Both plaintiff and Villaflor waited several hours for the hearing to begin. County Public Defender Shelia Ramos was in the courtroom to make an appearance for McGee and Kenneth Rosenfeld was in the courtroom to make an appearance for Villaflor. Ramos and Rosenfeld advised plaintiff and Villaflor that they could leave the courtroom and the hearing would be continued. Plaintiff and Villaflor left the courtroom on the advice of their attorneys.

100.    After plaintiff and Villaflor left the courtroom Ramos, Rosenfeld and Chandler conspired to deceive the court into issuing a warrant for plaintiff for failure to appear at the hearing. Chandler, Ramos, and Rosenfeld had actual knowledge that plaintiff and Villaflor appeared for the hearing and that Ramos and Rosenfeld could make an appearance on behalf of McGee and Villaflor, but they mislead the court into believing McGee and Villaflor did not show up for the hearing to punish them for filing papers in the United States Courts. The court issued a warrant against plaintiff and Villaflor for failure to appear.

101. Also, on April 22, 1999, Ramos and Rosenfeld both made motions to be relieved as McGee's and Villaflor's attorneys without giving McGee and Villaflor notice of the motion. On April 23, 1999 plaintiff called Ramos in an effort to have the warrant recalled. Chandler, Ramos and Rosenfeld requested and received a hearing pertaining to the failure to appear although the court had granted Ramos' and Rosenfeld's motions to be relieved as plaintiff's attorney. The hearing was set for April 27, 1999.

102. On April 27, 1999, during the hearing in Superior Court Ramos and Rosenfeld refused to represent McGee and Villaflor. Ramos told the court that she and the Public Defender's office would not represent plaintiff because he filed papers in the United States Court of Appeals for the Ninth Circuit. McGee and Villaflor were arrested and taken to county jail.

103. At the jail Blanas and his deputies ordered McGee to strip off all of his clothing and allow a deputy to make a visual inspection of the private areas of his body for the purpose of humiliating and degrading plaintiff and gratifying themselves. Plaintiff was required to pay money for a bond as a condition of his release.

104. On June 5, 1999, June 17, 1999, July 2, 1999, July 3, 1999, July 7, 1999, September 21, 1999, and October 16, 1999, Lou Blanas sent Sacramento Sheriff Deputies to McGee & Associates with directions to uses several patrol cars to park or position the cars as to shine their lights into McGee & Associates to intimidate McGee. On the dates listed in this paragraph the deputies complied with Blanas' orders and went to McGee & Associates and shined their lights inside the building. Defendants' actions intimidated and threatened plaintiff, McDowell and Villaflor. Plaintiff was hindered from working on filing papers in District Court.

105. On October 28, 1999 and November 3, 1999, plaintiff filed complaints with the CDFEH and CDOJ alleging the State of California, County, and LLB officials were violating his rights

23
*McGee v. CA State Complaint*

secured by Title 42 USC §§1981, 1982 and 2000a for racial reasons. Plaintiff submitted evidence to support the allegations. Davis directed Barbra Osborne, Lockyear, CDFEH, CDOJ to refuse to protect McGee although they had a statutory duty to protect McGee.

106.     In March 2000, Lockyear, Scully and Joseph Alexander used intimidation by threats of arrest to force McGee to pay $200.00 and take a diversion class to punish plaintiff for exercising and asserting his rights secured by Title 42 USC §§ 1981, 1982 and 2000a. McGee was denied a fair and speedy trial in the case No. 98M08748.

107.     Wilson and Davis had actual knowledge that it was unlawful for Lungren, Lockyear, and Scully to prosecute case No. 98M08748 and had the power to prevent Lungren, Lockyear, Scully, Chandler, and Alexander from further prosecuting cases to judgment but neglected and refused to make Scully dismiss the case.

108.     In July 2000, Elk Grove became an incorporated city of the State of California. Elk Grove then adopted the Policy by contracting with County Sheriff's Department for law enforcement services. Elk Grove City Council members Dan Briggs, Rick Soares, Mike Leary, James Cooper, Sophia Sherman and Elk Grove Attorney Anthony Manzanetti had actual knowledge that County Sheriff's Department had a policy of racial discrimination and that Leary, Blanas, and other defendants were involved in the Conspiracy and ratified the Policy and the Conspiracy when they agreed to contract with County sheriff's department to supervise the law enforcement program and activities in Elk Grove.

### *McGee v. Hildebrand et. al.* No. 2:02-cv-01578

109.     Also, in July of 2000, Hildebrand filed another unlawful detainer action against McGee. The action was entitled *Hildebrand v. McGee* No. 00UD9860. Hildebrand was attempting to evict McGee from the property located at 9412 Elk Grove Florin Road. McGee had the matter removed

1   to District Court. The cases were entitled *Hildebrand v. McGee* 2:00-mc-00205-GEB-DAD;

2   *Hildebrand v. McGee* No. 2:00-cv-01578-GEB-DAD.

3   110.   On July 26, 2000, before the unlawful detainer action *Hildebrand v. McGee* was remanded

4   back to Superior Court, Davis, Lockyear, County, Elk Grove, Blanas, Hildebrand, Mann,

5
6   Sandman and Lavra conspired to obtain a judgment and writ of possession in the matter of

7   *Hildebrand v. McGee* from Superior Court while having actual knowledge that the Superior Court

8   did not have jurisdiction to issue said judgment and writ. Defendants conspired to evicted plaintiff

9   from the property at issue without a valid judgment or a writ of possession and continue to hold

10
    possession of said property and plaintiff's personal property to this day.

11

12                     ***McGee v. People* No. 2:04-cv-00283-GEB-KJM**

13   111.   On January 15, 2001, at about 2:30 a.m an agent of Ford Motor Credit (agent) began ringing

14   the doorbell and pounding on the door of McGee's residence located on Iris Crest Way. The

15   pounding on the door terrorized the McGee's. When the door was opened the agent demanded

16   plaintiffs pay him over $500.00. McGee refused to pay Ford Motor Credit the $500.00. When

17
18   plaintiff went outside he saw the agent had Ruby McDowell's car attached to the agent's tow

19   truck in McGee's driveway. The agent demanded McGee to give him the key to the car. McGee

20   refused to give him the keys. McGee asked him to leave his property and the agent refused. The

21   agent pulled out his flashlight and used it to hit McGee in the chest and threatened McGee with

22   arrest. He said, "You're going to jail tonight." and called Elk Grove Police Department (EGPD).

23
24   The agent disturbed the peace in plaintiff's neighborhood at 2:30 a.m., for the purpose of

25   collecting a debt that plaintiff did not owe. Julia McGee called 911 for protection.

26   112.   Later on January 15, 2001, at 2:45 am EGPD arrived at plaintiff's residence. McGee told the

27   officer that the agent had: pounded on his door at 2:30 a.m.; assaulted him with a deadly weapon;

28

                                    25
                     *McGee v. CA State Complaint*

1  demanded plaintiff to pay him $500.00 that plaintiff did not owe to the agent; refused to leave

2  plaintiff's property when asked to do so; and was disturbing the peace in the neighborhood for the

3  purpose of collecting a debt plaintiff did not owe. EGPD refused to arrest the agent, make a crime

4  report, or investigate the crimes plaintiff alleged was committed against him, because plaintiff is

5

6  African American and the agent is white.

7  113.    On January 15, 16, and 19, 2001, Ford Motor Credit sent the same person to McGee's

8  residence located on Iris Crest way to intimidate by threats of violence, threats of arrest against

9  plaintiff for the purpose of collecting a debt from Ruby McDowell. On January 19, 2001, the

10  agent parked his tow truck on plaintiff's property without plaintiff's permission and without an

11

12  order from the court, and began working to pull McDowell's car on to his tow truck. Plaintiff

13  ordered the agent to stop trespassing and began walking toward the driver door of the tow truck.

14  The agent jumped off the truck grabbed McGee from behind and around the neck and hit

15  McGee's lip causing his lip to bleed.

16  114.    McDowell called EGPD for protection. EGPD arrived at McGee's residence. Deputy Rebecca

17

18  Roberts and another deputy discriminated against McGee on the grounds of his race. That is

19  Roberts and the other deputy saw that McGee is African American and the agent is white and

20  went over to the agent walked together with the agent about 50 feet away from McGee had a

21  discussion with the agent before calling the Sheriff's Civil Division. When the Civil Division

22  became aware that the agent was trespassing on McGee's property and that it was the same

23  McGee involved in *McGee et. al., v. Craig et. al*. They ordered Roberts to allow the agent to

24

25  trespass on McGee's property and take McGee's property without a hearing or court order to

26  punish McGee for complaining in District Court about the unconstitutional conduct of County

27  Sheriff.

28

26
*McGee v. CA State Complaint*

115.    Roberts warned McGee that he would be arrested if he did not let the agent trespass on his property and take his property. McGee showed Roberts his bloody lip and asked her to arrest the agent for assault and or take a police report. Roberts refused to question witnesses pertaining to the assault. County, Elk Grove, EGPD, and Roberts deprived plaintiff of property without due process.

116.    On November 17, 2003, Arnold Schwarzenegger became Governor of California and adopted, implemented, maintained, and promulgated the policies of Wilson and Davis by refusing and neglecting to see that the federal and state civil rights statutes and California Penal Code were faithfully executed as it pertained to McGee. Schwarzenegger had actual knowledge of the Conspiracy. Schwarzenegger also, had actual knowledge that County, Elk Grove, Citrus Heights, Scully, Blanas, Flint, and other persons had: (1) conspired to seize plaintiff's property without cause or a warrant on December 17, 2003; (2) arrested plaintiff without a warrant or probable cause on December 19, 2003; and (3) used fraud to charge plaintiff with two violent felonies in the matter of *People v. McGee* No. 03F11198 to punish McGee for preventing two white men from trespassing on his property and committing crimes against his family. Schwarzenegger had the power to prevent Scully, Blanas, and other persons from continuing to prosecute the matter No. 03F11198 in Superior Court; and continuing to execute the Policy and dong more wrongs in furtherance of the Conspiracy but refused and neglected to prevent more wrongs from being committed against plaintiff.

117.    On December 15, 2003, Auto Finance, Best Recovery, and Al Stoler worked in concert to sent Matthew Anderson to plaintiff's residence on Iris Crest Way, and used unlawful means to collect a debt from plaintiff. Latter on December 15, Anderson backed his tow truck on plaintiff's property without plaintiff's permission and attempted to take plaintiff's car and other property

inside of the car. When Julia McGee and her son came out of the house, Anderson assaulted her with a deadly weapon. That is Anderson got into his tow truck while plaintiff's car was attached to the tow truck and Julia was between the car and the tow truck and revved the engine. Anderson then falsely imprisoned Julia McGee in plaintiff's car.

118.    Plaintiff returned to his residence and ordered Anderson to leave his property. Anderson left the property and called EGPD to aid him in collecting a debt from plaintiff. When EGPD deputies Keller, Kawamoto, Ball and Bearor realized that plaintiff is African American and Anderson is white they took sides with Anderson and began threatening plaintiff, his family and houseguests with arrest. EGPD told plaintiff that if he did not give Anderson the car McGee would be arrested. Detective Bearor placed plaintiff's car on a stolen car list to further aid Anderson and Stoler in collecting a debt from plaintiff. Elk Grove continued to report plaintiff's car stolen until plaintiff paid Al Stoler money.

119.    On or about December 17, 2003, plaintiff called Elk Grove Attorney Anthony Manzanetti to complain of the conduct of EGPD. Plaintiff complained EGPD was aiding Al Stoler in collecting a debt from him. Manzanetti worked in concert with Ed Flint to send Bearor and Kawamoto to McGee's residence on Iris Crest Way for the purpose of punishing McGee for complaints of police misconduct. Bearor and Kawamoto went onto plaintiff's residence on Iris Crest Way, used intimidation by threats of arrest and threats of violence to seize McGee's residence and steal McGee's .22 caliber Beretta handgun without McGee's consent, and without a warrant or cause.

120.    On December19, 2003, Elk Grove, Manzanetti, Flint, Blanas, and Scully sent Citrus Heights Police Department to plaintiff's residence located on Iris Crest Way. County and Citrus Heights Police arrived at plaintiff's residence with two to three officers. The officers arrested plaintiff without a warrant or probable cause and transported him to County jail. County, Blanas, and

Scully had plaintiff strip searched to humiliate plaintiff. Plaintiff was humiliated. County also, made plaintiff pay money for a bond before releasing plaintiff to further punish plaintiff for exercising and asserting his federal constitutional rights.

121.    In December of 2003, Schwarzenegger, Lockyear, and Scully then covered up County, Blanas, Elk Grove, and Citrus Height's warrantless arrest of plaintiff by charging plaintiff with two violent felonies in Superior Court without swearing out a complaint against plaintiff and while Scully was embroiled in civil litigation with plaintiff.

122.    Lockyear and Scully used fraud in Superior Court to charge McGee with two violent felonies to punish plaintiff because plaintiff was African American and lawfully stopped two white men from trespassing at his residence, committing robbery, burglary, kidnap and assault with a deadly weapon. The action is entitled *People v, McGee* No. 03F11189.

123.    Plaintiff removed the criminal action to District Court. The case entitled *McGee v. People* No. 2:04-cv-00283-GEB-KJM. Scully, Curtis Fiorini, and Deborah Lobre further prosecuted the action and conspired with public defender Paulino Duran to have plaintiff convicted of a misdemeanor and sentenced him to time in jail without the court having jurisdiction to entertain the criminal action. Plaintiff was confined to County jail for several days as a result of a criminal action.

124.    Schwarzenegger and Lockyear had actual knowledge that Scully was prosecuting plaintiff in Superior Court case No. 03F11189 and also had knowledge that Scully was embroiled in civil litigation with plaintiff. Schwarzenegger and Lockyear had the power to prevent Scully, Fiorini, and Lobre from continuing to prosecute McGee in the case of *People v. McGee*, but neglected and refused to prevent Scully from depriving plaintiff of due process to further execute the Policy.

125. On October 13, 2001 at approximately 11:45 p.m., plaintiff and Villaflor were peacefully attempting to be served at the Doubletree Hotel/Hilton located at 2001 Point West Way in the City of Sacramento. McGee and Villaflor sat down on two separate seats in the front of the bar. Approximately ten minutes later two white women approached plaintiff and Villaflor and ordered them to get out of their seats so that the women could sit in the seats instead. Plaintiff and Villaflor refused to give up their seats. The two white women left and came back with an employee of the hotel. The employee ordered plaintiff and Villaflor to get out of the seats so that the two white women could sit down. When they refused to allow the white women to sit in their seats, they were ordered to leave the hotel.

126. Plaintiff and Villaflor peacefully refused to leave the hotel and remained in their seats. Customers and employees began to use assaults, threats, and intimidation to force plaintiff and Villaflor to leave the hotel. A hotel employee placed his face within one inch of plaintiff's face and told him that he better leave. McGee was intimidated. One of the two women walked up to McGee opened her jacket and showed McGee a can that appeared to be mace or pepper spray, stared him directly in the eye and said, "I will fuck you up." Plaintiff and Villaflor remained in their seats while other customers continued intimidating them. McGee and Villaflor turned their backs to the crowd and ordered a drink from the hotel. The hotel refused them service. The hotel bar tender replied, "If you want to play the race card here, you have to leave." The manager of the hotel arrived and ordered plaintiff and Villaflor to leave. When they refused to leave the manager called SPD.

127. When SPD arrived at the hotel, McGee told the officer that the hotel ordered them to get out of their seats and allow two white women to sit in them instead. McGee told the officers that they had a right to sit in the seats and a right to be served. When the officer saw that McGee was

30
*McGee v. CA State Complaint*

1    African American and the hotel manager and the women were white, SPD took sides with the

2    hotel and the women. The officers used intimidation, threats, violence and threats arrest to force

3    McGee and Villaflor to get out of their seats. SPD ordered them to leave the hotel. McGee called

4    SPD to report the crimes being committed against him. SPD sent four officers but the officers

5

6    refused to protect McGee's and Villaflor's civil rights and refused to make a crime report.

7    128.    In October 2001, City, SPD, City Council, Kevin Johnson, Angelique Ashby, Allen Warren,

8    Steve Hansen, Darrell Fong, Kevin McCarthy, Heather Fargo, Robbie Waters, Bonnie Pannell,

9    Laura Hammond, Ray Trethway, Steve Cohen, Robert Fong, Sandy Sheedy, Jimmie Yee, Dave

10    Jones, Arturo Venegas, Albert Najera, and others began working in concert to adopt, implement,

11

12    maintain, promulgate, and execute the Policy as it pertains to plaintiff. City, SPD Chief Venegas,

13    Don Cashmiere, and other persons conspired to cover up crimes committed against plaintiff at the

14    Doubletree/Hilton Hotel, to execute the Policy of racial discrimination.

15    129.    Plaintiff complained to City, SPD, Don Cashmiere, Kevin Johnson, Auturo Venegas, that

16    SPD officers, employees and customers of the Doubletree/Hilton Hotel used pepper spray,

17

18    intimidation, and threats of arrest to deny plaintiff service at the hotel because of his race.

19    Cashmiere intimidated plaintiff when he stated plaintiff would have been arrested if they did not

20    leave the hotel that night. On May 15, 2001, and June 23, 2001, City sent plaintiff letters stating

21    the actions of the police on October 13, 2001 at the hotel, fell within the "policy of the City." City

22    also refused to investigate crimes committed against plaintiff.

23

24    *McGee v. Schwarzenegger et. al. No. 2:04-cv-02598-LKK-DAD*

25    130.    On June 26, 2003, City refused to protect plaintiff's property from James Stinson and other

26    persons' crimes. City, City Council, SPD, Cashmiere and others condone and maliciously agree

27    to allow James Stinson, SPD, and other persons to: (1) break into plaintiff's business Flintlock's

28

Bar & Grill located at 7917 Bruceville Road in plaintiff absence and without plaintiff's consent and to use force and intimidation to hold plaintiff's property; (2) refuse to obey and enforce the July 1, 2003 restraining order issued by Superior Court in the matter of *McGee v. Stinson* No. 03AS0529 directing Stinson to take no property out of Flintlock's Bar and Grill; and (3) steal plaintiff's personal property and money .

131.    Plaintiff gave City, SPD and other city officials a copy of the restraining order which directed James Stinson not to take any property from Flintlock's Bar and Grill. SPD officers watched Stinson violate the restraining order. Plaintiff also gave City a recording of Stinson and others looting the bar. City refused to arrest Stinson or have Stinson return the property back to plaintiff, because McGee is African American and James Stinson is White.

132.    City further executed its policy of discriminating against African American by working in concert with California Department of Alcoholic Beverage Control (ABC), Jerry Meyer, Reba Chastain, Diana Fouts, and others persons to hinder, deter, and prevent plaintiff from obtaining a liquor license at the property located at 7917 Bruceville Road on the same and equal basis that they allowed James Stinson to hold a liquor license at the same location.

133.    On September 24, 2003, Fargo, Waters, Hammond, Trethway, Fong, Sheedy, Yee, Jones, Venegas , and others worked in concert with Pannell to file and maintained a frivolous and meritless protest against plaintiff's application for a liquor license.

134.    The frivolous and meritless protest of plaintiff's application for a liquor license caused plaintiff to lose income, interfered with plaintiff's business relationship with MMDD, and hindered, deterred and prevented plaintiff from operating Valley Hi Sports Bar and Grill (VHSBG) for approximately eight months.

135. Pannell cc'd CA State Senator Deborah Ortiz, CA Assembly member Darrell Steinberg, and County Supervisor Illa Collin the frivolous protest which contained false information. Steinberg, Ortiz, and Collin all had actual knowledge that the protest was frivolous and had power to prevent City from maintaining the frivolous protest but refused and neglected to do so.

136. The City Council had actual knowledge that the meritless protest of plaintiff's application for a liquor license would prevent plaintiff from earning an income, and that plaintiff had payments to make on his lease, but maintained the protest to prevent plaintiff from operating his business in City because of his race.

137. As a direct result of City's frivolous protest and actions alleged above no business was transacted with the public at 7917 Bruceville Road for approximately eight months and people began loitering and conducting illegal activities on the walkway directly west of VHSBG.

138. In April 2004, plaintiff began having severe plumbing problems at VHSBG. Plaintiff complained to MMDD, Asset Managers, and Willie Richardson about the plumbing problems. Plaintiff complained he was paying a plumber several times a month to unclog the sewer. Plaintiff complained the: (1) water backing up into the building from the kitchen floor drain contained human feces; (2) water was causing the entire building to flood; (3) flooding was interfering with his business; (4) flooding was interfering with the business of the Liquor Tree; (5) foul odors constantly inside and outside the premises was interfering with the business; and (6) new linoleum floor had to be removed as a result of the flooding.

139. In June 2004, plaintiff began to complain to City, Pannell, SPD, and MMDD about people loitering, gambling, selling drugs, selling illegal CD's, smoking drugs, assaulting plaintiff and his customers and committing other crimes in the parking lot of Valley Hi Village. Plaintiff complained the public nuisance was hurting his business. City explained to McGee that the loiters

1    and other illegal activities going on in the parking lot was a direct result of SPD cracking down

2    on drug dealing at California Place Apartments located across the street from Valley Hi Village.

3    140.    On or about August 7, 2004, at about 1:30 am between ten and thirty people entered on to the

4    parking lot of Valley Hi Village and began playing loud music and dancing on top of their cars in

5    
6    front to VHSBG. The customers of VHSBG were concerned for their safety. The people playing

7    the loud music and dancing on cars in the parking lot were not customers of VHSBG.

8    141.    Plaintiff's employees called SPD. When the police arrived the police officers told plaintiff

9    that VHSBG was becoming a "Bobby T's and Cabaret and that if plaintiff continued to call SPD

10   for protection, City was going to close down VHSBG. The officer also stated that he was going to

11   
12   call ABC and have plaintiff's liquor license revoked. Both Bobby T's and Cabaret's are owned by

13   black people. The SPD did not make a police report.

14   142.    On or about August 11, 2004 at approximately 8:15 pm, people once again began loitering

15   and conducting illegal business in the parking lot of Valley Hi Village shopping center. When

16   plaintiff arrived in a car with Ruby McDowell he feared for his safety. Instead of going in to

17   
18   VHSBG, plaintiff and McDowell drove around the shopping center and saw at least 40 people

19   loitering in and around the shopping center. Plaintiff's associate Joseph Villaflor called SPD and

20   complained about the public nuisance. SPD responded to the call. Instead of parking their patrol

21   cars and inquiring about the complaint, the police chose to drive through the parking lot without

22   stopping. Minutes later there was a gunfight in the parking lot, several shots were fired. When the

23   gun fight ended a black male was laying in the parking lot with gunshot wounds. The gun fight at

24   
25   Valley Hi Village Shopping Center had a negative impact on plaintiff's business.

26   143.    On August 16, 2004, at approximately 10:30 p.m. Fat Ducks Pizza located in the Valley Hi

27   Village Shopping Center was robbed by a person threatening employees with a gun. Latter, on

28   

34
*McGee v. CA State Complaint*

August 17, 2004 employees and other persons questioned plaintiff about the robbery. Plaintiff's security guards requested plaintiff purchase bullet proof vests and then quit several days later. The public nuisance was having a negative effect on plaintiff's business.

144.    On or about August 12, 2004; August 16, 2004; August 17, 2004, plaintiff again contacted Pannell's office and SPD to complain about the events of August 7, 2004 and August 11, 2004. Plaintiff complained that black males between the ages of 16 and 25 years old wearing white undershirts and blue jeans were loitering in Valley Hi Village and committing crimes. Plaintiff asked Pannell and Lt. Han if they could prevent the public nuisance from continuing at Valley Hi Village. Pannell and Lt. Han told plaintiff that the city does not have the resources to prevent crime at Valley Hi Village.

145.    On or about August 29, 2004, people again began to loiter in front of VHSBG. Plaintiff called the SPD because he feared for his safety, the safety of his employees and the safety of his customers. SPD arrived and the people dispersed. SPD did not take a report.

146.    On or about September 11, 2004, at approximately 8:00 pm, people began loitering in front of VHSBG. The people loitering in front of the business began to intimidate one of plaintiff's vendors. The people were saying to one and another "This is our house!" the vendor told plaintiff that she was extremely intimidated. Plaintiff placed calls to SPD to complain about the nuisance. Plaintiff's security guard called his company for backup security because he was concerned for his safety. There were well over 15 people loitering in the parking lot that night. Plaintiff's customers were afraid to go to VHSBG that night. Plaintiff lost income that night. SPD did not make a crime report, although they had a duty to investigate the crimes McGee was reporting.

147.    Later plaintiff and Pannell set up a meeting to discuss the public nuisance. Plaintiff and City invited plaintiff's landlord MMDD Sacramento Project (MMDD), SPD, other business owner,

1    tenants of Valley Hi Village Shopping Center, and concerned citizens to the meeting. The

2    meeting took place on August 26, 2004 at 9:00 am at VHSBG. Pannell began the meeting by

3    saying the shopping center had severe problems, and that plaintiff added to the problem. Pannell

4    also stated that she did not want plaintiff to open Valley Hi Sports Bar and Grill in the first place.

5    Pannell further stated that City would like to help but City did not have the resources to help, and

6    offered plaintiff to contract with City to pay off duty police officers for protection.

7

8    148.   City, Fargo, Pannell, Waters, Hammond, Trethway, McCarthy, Cohen, Fong, Sheedy, Yee,

9    Jones, Najera, and other city officials agreed to hold a meeting on August 26, 2004, at VHSBG in

10   front of plaintiff's landlord and other persons and state: City did not want plaintiff to operate

11   VHSBG in City. City refused to protect plaintiff's business from the public nuisance. City did not

12   want plaintiff opening and operating VHSBG in City because of plaintiff's race and solely on the

13   grounds that plaintiff is African American.

14

15   149.   City Council, City, and SPD had the power to enforce the law in City but attempted to extort

16   money from plaintiff to protect his business from the Public Nuisance City had created, to further

17   execute the Policy.

18

19   150.   On or about September 19, 2004, plaintiff's security guard was sprayed with pepper spray and

20   punched in the face in the parking lot of Valley Hi Village Shopping Center. Plaintiff called SPD.

21   Two SPD officers arrived at VHSBG and told plaintiff, "That is what you get for opening a

22   business in a bad area." The two officers refused to take a crime report or further invesitage the

23   crime because the security guard is African American. From September 19, 2004, until present

24   plaintiff has not been contacted by any law enforcement agencies about making crime reports or

25   about the crimes committed at VHSBG.

26

27

28

151. On or about October 9, 2004 at about 1:59 a.m., the person who had punched plaintiff's security guard on September 19, 2004 arrived at VHSBG. When he discovered that VHSBG was closed he punched the front window and almost broke it. Plaintiff and his employees were intimidated. That person had been informed that he was no longer welcome at VHSBG but returned anyway. City's Policy of racial discrimination incited more crimes to be committed at Valley Hi Village.

152. On or about October 11, 2004 at approximately 10:30 pm, a group of people began loitering in front of VHSBG. Plaintiff refused to allow the people inside VHSG due to the fact that they had a pattern and practice of loitering in the parking lot of Valley Hi Village Shopping Center. There were between three to five customers in VHSBG at the time. McGee asked the people to stop standing in front of VHSBG but loiters refused to leave. Plaintiff telephoned SPD for protection. The police did not respond for about an hour. Plaintiff locked the door at VHSBG while waiting for the police to arrive. During the time plaintiff was waiting for police protection one customer decided to leave. When the customer went outside he was savagely beaten up by the people loitering outside. That was the very first time and the very last time that customer visited VHSBG.

153. Plaintiff called the SPD a second time. The police finally arrived. Plaintiff asked the police officer to make a crime report and the officer refused, because the customer that was assaulted is African American. Plaintiff insisted that the officer take a crime report, the officer agreed to make a crime report but threatened plaintiff that he would forward a complaint to the ABC. No crime report was made. There was a street gang in the parking lot that had just committed a violent assault and plaintiff called the police to protect his customer and to report the crime but SPD refused and neglected to protect plaintiff's customer or to investigate the crime.

37
*McGee v. CA State Complaint*

154.    Plaintiff became concerned for his safety and the safety his customers and employees and closed VHSB the next night and the following morning and considered permanently closing VHSBG. From that date until the day County and City forced plaintiff out of business, plaintiff began to close VHSBG four hour earlier on certain nights.

155.    October 13, 2004, plaintiff sent a letter to Pannell, and CC'd all members of City Council, the mayor, police chief, and the Office of Police Oversight. In plaintiff's letter plaintiff advised City that when plaintiff called the SPD to report loiters in the parking lot and the police arrived the loiters take refuge inside VHSBG, plaintiff advised SPD to get out of their patrol cars and come into VHSBG to prevent the loiters from disturbing his business.

156.    Also, on October 13, 2004, plaintiff called Sgt. Pease of SPD in an attempt to stop the public nuisance at Valley Hi Village. When Sgt. Pease and another officer arrived at VHSBG they followed two of plaintiff's African American customers as they left VHSBG. Sgt. Pease caught up with the customers and told them that he did not want the men back at VHSBG. The officers returned to VHSBG and began to complain to Thomas McGee and Joseph Villaflor about the number of telephone calls to SPD for assistance from VHSBG. Pease told Thomas McGee and Villaflor that the customers were Oakland gang members and he did not want them back at VHSBG. Pease said VHSBG's sign was red because it was a gang color. He said the gang was "Valley Hi Piru." Before Pease left VHSBG he threatened to arrest Thomas McGee for being drunk in public.

157.    On or about October 22, 2004 at about 9:00 pm, a group of Tongan males between the ages of 21 through 25 arrived at VHSBG. The group left the bar and began loitering in the parking lot. Plaintiff refused to allow the group entry back into the bar. Plaintiff requested the group to leave.

158. At about 11:45 pm, the same group arrived back at the front door of VHSBG. Some of the group were holding open bottles of Hennessey Cognac and a bottle of apple juice and were drinking out of the bottles. The group was physically bigger than plaintiff and his security guard, and appeared to be intoxicated, so plaintiff and his security guard went inside of the business and locked the door.

159. Latter on October 23, 2004 at about 12:15 am, plaintiff noticed the same group and other people in front of Fat Duck's Pizza drinking alcohol on the hood of their cars. Plaintiff called SPD for protection. When the officer arrived the groups of people were drinking Hennessey out of the bottle on top of their cars in plain sight of the officer. No officer got out of the car. The patrol car placed a spotlight on the group that was in front of Fat Duck's Pizza.

160. After the police placed his spotlight on the group, the group began to move in the direction of VHSBG. Plaintiff instructed his security guard to go back inside and lock the door. After plaintiff locked the door, plaintiff began to hear people knocking on the door. When plaintiff refused to open the door the group began pounding on the door. Plaintiff feared for his safety. There were approximately thirty customers inside the bar while the group was violently pounding on the door. Plaintiff could not prevent customers from leaving through the front door, so he could not keep the front door locked. Plaintiff went into the kitchen and called 911 for police protection.

161. When plaintiff came out of the kitchen he witnessed a member of the group walking in a threatening manner towards his security guard. The security guard was backing away from the trespasser. Plaintiff walked in the direction of his security guard to offer some assistance. The trespasser was about six foot three inches tall and appeared to weigh two hundred fifty pounds. The trespasser began walking toward plaintiff in a threatening manner causing plaintiff to fear for his safety. Plaintiff had to place a table between him and the trespasser. Plaintiff fled to into the

39
*McGee v. CA State Complaint*

kitchen in fear. One of the trespassers began to say "this is our bar" and "we run this bar" as he was letting other trespassers into the bar. Plaintiff's security guard was unable to check persons entering into the bar for their identification or check for weapons because the group had taken control of the front door.

162.    SPD arrived about twenty minutes later and the trespassers left VHSBG. Officer bailey and another officer responded to plaintiff's call for assistance. Bailey began to complain to plaintiff about plaintiff calling SPD. Plaintiff asked the officers to make a crime report. Bailey asked plaintiff what crime had been committed. Plaintiff detailed the events of October 22, and 23, 2004 as set out above. Bailey replied that there were no crimes committed. Bailey refused to take a crime report because McGee is African American. Plaintiff asked Bailey if his refusal to make a crime report was because plaintiff's race and color. Bailey began to record the conversation. Plaintiff asked Bailey once more to make a crime report but, Bailey refused to make a report. Bailey called his supervisor for assistance. While plaintiff was waiting for the supervisor, Bailey threatened to arrest plaintiff for being drunk in public. Bailey asked plaintiff if he had anything to drink and if he wanted to take a sobriety test. Plaintiff went back inside VHSBG to avoid being arrested. Bailey's supervisor arrived latter and agreed to make an incident report, but refused to make a crime report.

163.    From August 7, 2004 until November 12, 2004, SPD had threatened to have ABC revoke plaintiff's liquor license to punish him for requesting protection from the police. City, City Council, SPD, Pannell, and other persons began to work in concert with ABC and Jerry Meyer to revoke plaintiff's liquor license to punish plaintiff for requesting SPD to protect his person, property, employees and customers.

164.    In furtherance of the Conspiracy, on November 12, 2004 at approximately 10:00 pm, ABC, and Jerry Meyer sent Daniella Petouka, Boston Whitney, Investigator Freitas, and Investigator Sutton to VHSBG. Petouka and Whitney used fraud and deceit to illegally purchase alcohol. Freitas and Sutton entered into VHSBG armed with guns, searched and seized plaintiffs property without a warrant or cause. Freitas and Sutton seized plaintiff's cash register and demanded plaintiff's employee open plaintiff's cash register. One of the investigators grabbed a handful of plaintiff's money and began to sort through the money and took some of plaintiff money, without plaintiffs consent and without a court order and left the business.

### *McGee v. CA State Senate et. al., No. 2:05-cv-02632-GEB-EFB*

165.    On December 7, 2004, plaintiff filed a complaint in District Court. The action was entitled *McGee v. Schwarzenegger et. al.* No. 2:04-cv-2598-LKK-DAD. The complaint named Schwarzenegger, Lockyear, County, City, Scully, Blanas, Meyer, Freitas, Sutton, and others as defendants. The complaint alleged plaintiff was being denied adequate law enforcement protection unequal to those provided for white citizens and that City and others had entered into a conspiracy to violate plaintiff's civil rights. The complaint also detailed the facts set out above.

166.    After Schwarzenegger and Lockyear were served the complaint they began to use: CDOJ; Jacob Applesmith; Stacy Eurie; and Tamara Morgan to cover up the crimes committed against plaintiff. Schwarzenegger and Lockyear then directed and supervised ABC, Jerry Meyer, Fouts, Reba Chastain, Dean Leuder to use ABC to file accusations against plaintiff's liquor license to punish plaintiff for filing the matter of *McGee v. Schwarzenegger et. al.* in District Court.

167.    County, Ryan and Wright hired Randolf, Creeger and Chalfant LLP, and Robert Chalfant to file a motion to dismiss in District Court to cover up the racially motivated crimes committed against plaintiff by County officials.

168.    On December 21, 2004 at about 1:30 p.m. Plaintiff accompanied Kerrin Seisha to SPD, located at 5770 Freeport Blvd. Plaintiff observed Seisha serve a summons and complaint, Notice, Motion for TRO, and other documents on Albert Najera and Bailey. As McGee and Seisha were walking to the car SPD sent a security guard and two police officers to assault, arrest intimidate plaintiff and Seisha without a warrant or probable cause. One of the officers told McGee that he was being detained because he looked, "suspicious." During the time McGee was being detained for looking suspicious, white citizens similarly situated to McGee was able to freely walk to their cars.

169.    After the City was served the complaint Sacramento City Council directed and supervised Samuel Jackson, Gustavo Perez, and Joseph Russell to cover up the fact the City, City Council, and SPD had committed wrongs in furtherance of the crimes committed in the Conspiracy. Russell filed a motion to dismiss in furtherance of the Conspiracy.

170.    As a direct result of the Policy of the State of California, County, City, Elk Grove, Citrus Heights, and MMDD's failure to perform its duties set out in their lease agreement with plaintiff, plaintiff was prevented from making timely payments on his lease to MMDD.

### *McGee v. MMDD et. al.* No. 2:05-cv-0339-WBS-DAD

171.    On January 11, 2005, MMDD, Mel Di Salvo, Asset Investment Managers Inc., John Lawrence Tiner, Willie Richardson, John Benjamin Tiner, and Edward Brenner, worked in concert to file the unlawful detainer action entitled *MMDD v. McGee No. 05UD0155* in Superior Court. Defendants are attempting to evict plaintiff from the property described as 7917 Bruceville Road. Plaintiff twice removed the action to District Court by filing the actions: *MMDD v. McGee* 2:05-cv-0134-FCD-PAN and *McGee v. MMDD et. al.* 2:05-cv-0339-WBS-DAD in District Court.

172.    On February 2005, ABC, Meyer, Fouts, Chastain, and Leuderer conspired to retaliate against plaintiff for testifying freely, fully and truthfully in District Court in the matter of *McGee v. Schwarzenegger et. al.*. Defendants filed a frivolous and meritless accusation against plaintiff's liquor license to punish plaintiff for filing a complaint in District court.

173.    On March 11, 2005, March 18, 2005, and March 24, 2005 Schwarzenegger, Lockyear, Meyer and other persons directed and supervised Fouts to harass and intimidate plaintiff by making meritless demands that plaintiff produce documents for ABC. Fouts made frivolous demands of plaintiff on several occasions. Fouts also entered into VHSBG on several occasions and harassed, threatened and intimidated plaintiff, his employees, and his customers.

174.    On or about Friday May 13, 2005, at approximately 9:00 p.m. water started flooding into VHSBG from the kitchen floor drain. Plaintiff closed the business because of health concerns. Later, on May 14, at approximately 12:01 p.m. plaintiff attempted to reopen VHSBG but water began to flow from the floor drain again. Plaintiff had not used any of the water inside VHSBG for over twelve hours but water was still flowing from the kitchen floor drain.

175.    On May 16, 2005, Lockyear, Scully, Fiorini, Lobre and Sacramento Public Defender Paulino Duran conspired to obtain a criminal judgment against McGee by use of fraud in Superior Court in the case *People v. McGee* No. 03F11198.

176.    On or about May 17, 2005, VHSBG was still closed as a result of the flooding. Plaintiff received a telephone call from City Department of Health. City threatened to close VHSBG if plaintiff did not stop the flooding. City informed plaintiff that Willie Richardson of Asset Investment Managers' complained that the flooding at VHSBG was a health hazard.

177.    While the action *McGee v. MMDD et. al.* was still pending in District Court, MMDD and other parties listed above directed attorney Edward Brenner to obstruct justice in Superior Court to obtain a judgment in the matter No. 05UD0155.

178.    On July 8, 2005, Brenner used fraud and perjury on the clerk of Superior Court and mislead the clerk into entering a judgment and issuing a writ of possession in the matter of *MMDD v. McGee*. 05UD0155, while the removal action was pending in District Court. MMDD, DiSalvo, Tiners, Richardson, Brenner and others then attempted to enforce the judgment and served plaintiff the writ of possession although they had actual knowledge the judgment was not valid.

179.    Plaintiff filed a request for restraining order in District Court asking the court in the matter of *McGee v. MMDD et. al.*, 2:05-cv-0339-WBS-DAD to stop MMDD and other persons from evicting plaintiff with an invalid judgment. Plaintiff served MMDD his request for restraining order. MMDD stopped attempting to enforce the judgment.

180.    MMDD, DiSalvo, Tiners, Richardson, Asset Investment Managers Inc., had actual knowledge that the public nuisance in the parking lot of Valley Hi Village was causing plaintiff to lose income; and the water flooding through the kitchen floor drain was preventing plaintiff from earning an income. MMDD had a duty to stop the nuisance and the sewer problems but refused and neglected to do so in furtherance of City, its officers, agents, and employees conspiracy to prevent plaintiff from operating his business in City on account of his race.

181.    In furtherance of MMDD and other persons conspiracy to use fraud, perjury and deceit in Superior Court, MMDD, DiSalvo, Asset Investment Managers Inc., and other persons hired attorney Thomas Hogan and instructed Mr. Hogan to obstruct justice in Superior Court by deceiving the court into entering another judgment and a writ of possession against plaintiff pertaining to plaintiff's agreement to lease 7917 Bruceville Road.

182.   On August 23, 2005, Schwarzenegger and Lockyear directed and supervised ABC, Meyer, and other persons to file another frivolous and meritless accusation against plaintiff's liquor license to further retaliate against plaintiff for testifying freely, fully and truthfully in District Court in the matter of *McGee v. Schwarzenegger et. al.*

183.   On August 25, 2005, MMDD and Hogan filed another unlawful detainer action pertaining to the same property, parties, contract and issue in the cases No. 05UD00155 and No. 2:05:0339-WBS-DAD while having actual knowledge that District Court had jurisdiction over the issue. The case is entitled *MMDD v. McGee No. 05UD06252*. Hogan had the summons and complaint served on plaintiff.

184.   On August 30, 2005, plaintiff filed a motion to quash in Superior Court in the matter of 05UD06252 claiming that another unlawful detainer action pertaining to the same issue is pending in the court, and that there were problems with conditions of the property. The motion to quash was denied. McGee filed a writ of mandate in Superior Court. While the writ of mandate was pending in Superior Court and the issue of possession of the property on Bruceville Road was pending in District Court, Hogan and MMDD use fraud and perjury to obtain a default judgment and a writ of possession in the case of 05UD06252. The default judgment was based on the ground that McGee had failed to defend the action. Hogan, MMDD, Asset Investment Managers Inc., had actual knowledge that McGee was defending said action. Superior Court stayed the writ of possession.

185.   On August 31, 2005, at about 12:01 p.m. raw sewage was flowing from a drain in the parking lot of Valley Hi Village approximately 20 feet away from the front door of VHSBG. There was toilet paper stained with human feces in the parking lot. There was a vile smell inside and outside

VHSBG. The sewage continued to flow into the parking lot until the afternoon or late morning of September 1, 2005.

186. From September 6, 2005 through September 12, 2005 MMDD and other persons cut two holes in the bar in VHSBG and took the pieces away. MMDD sent construction workers to replace the broken sewer line. The workers used plaintiff's power to power their equipment and left VHSBG unsuitable to operate. DiSalvo refused to return the pieces of the bar to plaintiff or return the property back into the condition it was before MMDD repaired the plumbing.

187. On September 26, 2005, County, Hogan, MMDD, DiSalvo, Richardson, and the Tiners broke into plaintiff's property located at 7917 Bruceville Road in plaintiff's absence and without plaintiff's consent, stole money and plaintiff's personal property. MMDD and Asset Investment Managers Inc. then worked in concert with SPD to use threats of arrest to keep plaintiff away from his property. MMDD and SPD continue to keep plaintiff away from hundreds of thousands of dollars of his property to this day.

188. Plaintiff complained to SPD that MMDD and others had broken into his business in plaintiff's absence and without his consent and stole his personal property. SPD sent a crime scene investigator to investigate the crime scene. Instead of SPD investigating the crimes committed against plaintiff, SPD decided to use threats of arrest to aid MMDD in continuing to hold hundreds of thousands of dollars of plaintiff's property. SPD has not contacted plaintiff to this day, regarding MMDD and other persons stealing of his property.

### *McGee v. State of California et. al. No. 2:09-0740-GEB-EFB*

189. On November 14, 2005, plaintiff filed the case entitled *McGee v. CA State Senate et. al.* No. 05AS05074 in Superior Court. The complaint named CA State Senate, CA State Assembly, Schwarzenegger, Lockyear, County, City, MMDD, Asset Investment Managers Inc., Hogan, and

1    other people as defendants. The complaint alleged that Schwarzenegger, Lockyear, County, City

2    and other persons were violating plaintiff's civil rights through discriminating against African

3    American and detailed the events set out above. Plaintiff served summons and complaint and

4    request for temporary restraining order on defendants. The evidence submitted with the TRO

5    motion included an order from Superior Court in the case 05UD06252 which clearly

6    demonstrated MMDD and County could not have had a valid writ of possession when they took

7    possession of the property located at 7917 Bruceville Road.

8

9    190.    CA Legislature, Perata, Nunez and Karen Bass had actual knowledge that Schwarzenegger

10   and Lockyear were: (1) conspiring to violate plaintiff's civil rights through the Policy; (2)

11   involved the Conspiracy; (3) refusing to make MMDD return plaintiff's property; (4) using CDOJ

12   to cover up crimes committed against plaintiff; and (5) using ABC to punish plaintiff in

13   retaliation for plaintiff filing *McGee v. Schwarzenegger et. al.* in District Court. CA Legislature,

14   Perata, Nunez, and Bass had the power to prevent Schwarzenegger and Lockyear from continuing

15   to: execute the Policy and doing acts in furtherance of the Conspiracy, but refused and neglected

16   to impeach Schwarzenegger and Lockyear to prevent them from further executing the Policy and

17   doing acts in furtherance of the Conspiracy.

18

19   191.    On November 30, 2005, plaintiff filed a complaint to recover possession of the property

20   located on Bruceville Road and damages resulting from forcible entry and detainer. The case was

21   entitled *McGee v. MMDD et. al., No. 05AS05330.* The suit named MMDD, DiSalvo, Asset

22   Investment Managers, Tiner, Richardson, Tiner as defendants. Hogan was their attorney of

23   record. In furtherance of the Conspiracy, the law office of Gurnee & Daniels LLP, Ellen Claire

24   Arabian, and Jerry Duncan interjected themselves in the proceedings and prevented plaintiff from

25   obtaining default judgment. Arabian, Duncan and others interjected themselves in the action

1     contrary to California Code of Civil Procedure to aid MMDD, Hogan and other persons in their

2     conspiracy to continue to unlawfully hold hundreds of thousands of dollars of plaintiff's property.

3     192.    The law offices of Gurnee & Daniels LLP, Arabian, Duncan and Hogan then began to work

4
    in concert to unlawfully evict plaintiff from his residence located on Iris Crest Way. Hogan,
5

6     Gurnee & Daniels LLC, Arabian, Duncan, County and other persons used fraud to evict plaintiff

7     from his residence. Plaintiff was prevented from receiving orders from Superior Court and did not

8     respond to the orders as a direct result of Hogan, Arabian, and Duncan's fraudulent actions in

9     Superior Court to dismiss the case entitled *McGee v. MMDD et. al.*

10
    193.    On December 25, 2005, plaintiff dismissed the case *McGee v. CA State Senate et. al.* in
11

12     Superior Court. On December 26, 2005, plaintiff filed *McGee v. CA State Senate et. al.* No. 2:05-

13     cv-02632-GEB-EFB in District Court. The complaint named the same defendants that were

14     named in Superior Court case entitled *McGee v. CA State Senate et. al.* and added Parata and

15     Nunez as defendants.

16
    194.    CA State Legislature, Schwarzenegger, Lockyear, used CDOJ and CA Legislature Council to
17

18     cover up: (1) the fact they were conspiring with Hogan, SPD and MMDD to unlawfully hold

19     hundreds of thousands of dollars of plaintiff's property, and (2) the fact that they were

20     committing acts in furtherance of the Conspiracy.

21     195.    County used Randolf, Creeger and Chalfant LLP to further cover up the: crimes being

22     committed against plaintiff in furtherance of the Conspiracy. The law firm agreed to aid County

23
    in the Conspiracy of a fee.
24

25     196.    City Attorney Eileen Teichert and Russell worked in concert to aid City in covering up the

26     fact that City, MMDD and SPD were working in concert to steal hundreds of thousands of dollars

27

28

1  of plaintiff's property and were continuing to hold plaintiff's property in furtherance of the

2  Conspiracy.

3  197.    As a direct result County, City, Scully, Blanas, MMDD, and other defendants refusal to

4  prevent SPD, MMDD, Hogan, DiSalvo, and others from stealing and holding hundreds of

5  thousands of dollars of plaintiff's property and the Conspiracy, plaintiff was unable to pay rent on

6  his residence on Iris Crest Way and Margaret Seagraves filed an unlawful detainer action against

7  the McGee's. In March 2005 Hogan filed an unlawful detainer action against plaintiff and Julia

8  McGee on behalf of Seagraves. The action is entitled *McGee et.al. v. Seagraves No. 06UD01661.*

9

10  ### *McGee et. al. v. Seagraves et. al.  No. 2:05-cv-00485-MCE-GGH*

11  198.    On March 9, 2006, plaintiff and Julia McGee removed the action of *Seagraves v. McGee et.*

12  *al. No. 06UD01661* to District Court on the grounds that CA State Senate, CA State Assembly,

13  Perata, Nunez, Schwarzenegger, Lockyear, County, City and Elk Grove have violated their civil

14  rights under 42 U.S.C. §§ 1981, 1982, and 2000 through discrimination against African

15  Americans. The action was entitled *McGee et. al., v. Seagraves et. al.,* No. 2:05-cv-00495-MCE-

16  GGH.

17

18

19  199.    Defendants: Hogan; CA Legislature; City; County; Elk Grove; Perata; Nunez;

20  Schwarzenegger; Lockyear; Blanas; Randolf Creeger and Chalfant LLP, and other persons had

21  actual knowledge that the action *Seagraves v. McGee et. al.,* had been removed to District Court

22  and that a judgment could not be entered or executed in the action 06UD01661 until the case was

23  remanded back to Superior Court.

24

25  200.    In March of 2006, Hogan and White used fraud, perjury and forgery to mislead the clerk of

26  Superior Court into entering a judgment and issuing a writ of possession in the matter *Seagraves*

27  *v. McGee et. al.* while the action was pending in  District Court. Defendants listed in the

28

49
*McGee v. CA State Complaint*

paragraph above had actual knowledge that Superior Court did not have jurisdiction to enter judgment in the action. Defendants also, had actual knowledge that Hogan had used fraud, perjury and deceit in Superior Court to obtain the judgment and writ of possession in the case of *Seagraves v. McGee et. al.*

201.    CA Legislature, Perata, Nunez, Schwarzenegger, Lockyear County, City and Elk Grove had actual knowledge that: (1) Hogan and County were about to enforce the judgment and writ of possession; and (2) Hogan and County were conspiring to evict plaintiff from his residence in furtherance of the Conspiracy. Defendants had the power to prevent Hogan and County from evicting plaintiff and his family from their residence with a writ of execution obtained through fraud, but refused and neglected to do so.

202.    The defendants listed above then conspired and maliciously agreed to allow Hogan, Sacramento Delta Property Management Inc., White, and County to evict the McGee's from their residence located at 8553 Iris Crest Way and to steal the property inside said residence on April 3, 2006. Defendants continue to hold plaintiff's property to this day.

203.    As a direct result of the Conspiracy plaintiff, Julia McGee and their children became homeless. Plaintiff and his family began to reside at the property located at 5617 Bonniemae Way Sacramento, California 95820.

204.    Plaintiff filed a complaint to recover possession of the property located at Iris Crest Way and damages resulting from the forcible entry and detainer. The action is entitled *McGee v. Seagraves et. al.* No. 06AS05145. Hogan represented Seagraves in the matter. Superior Court issued a ruling that the judgment entered in the matter of *Seagraves v. McGee et. al. No. 06UD01661* was issued without the court having jurisdiction to do so.

205.    Hogan, Sacramento Delta Property Management Inc., White, and other persons continued to defend the action *McGee v. Seagraves et. al.* and continue to unlawfully hold plaintiff's property although they have actual knowledge that the judgment entered in 06UD01661 as a matter of law could not be enforced.

206.    On January 9, 2007, Edmund G. Brown Jr. became Attorney General of California. Brown adopted Lungren and Lockyear's policy by refusing and neglecting to see that the federal and state civil rights statutes and California Penal Code were faithfully executed pertaining to plaintiff. Brown had actual knowledge that: (1) Schwarzenegger, Lockyear, and Scully had used fraud to obtain a criminal judgment against plaintiff to punish plaintiff for exercising and asserting his right secured by Title 42 §§ 1981, 1982, and 2000a; (2) the judgment was hindering and deterring plaintiff from conducting his real estate business; (3) Mark McGee, Thomas McGee, Hogan, Link, and other persons were using fraud, perjury, and deceit in Superior Court to obtain judgments against plaintiff and his family and take plaintiff's property; (4) MMDD and SPD were using intimidation and threats to keep plaintiff away from hundreds of thousands of dollars of his property; and (5) defendants were executing the Policy and doing acts in furtherance of the Conspiracy.   Brown had the power to protect McGee from the Policy and the Conspiracy, but refused and neglected to prevent defendants from executing the Policy and doing more acts in furtherance of the Conspiracy.

### *McGee v. Attorney General of California No. 2:11-cv-02554-CMK*

207.    On July 12, 2007, incited by the conspiracy set out above, Mark McGee, Gary Link, and Law Offices of Gary L. Link used fraud, perjury, and deceit to file the unlawful detainer action entitled *McGee v. McGee No.* 07UD05837 in Superior Court. Plaintiff and Julia McGee were defendants in the action. The complaint was not subscribed or verified by the property owner or an agent of

the property owner. The false complaint stated plaintiff and Sora McGee had entered into a landlord tenant relationship when in fact they had not. Plaintiff filed a motion to quash the summons and a motion for summary judgment and Mark McGee and Gary L. Link stopped prosecuting the action.

208.  Hogan, Link, Mark McGee, Thomas McGee, and other persons began working in concert to amend the fraudulent complaint file in matter of *McGee v. McGee et. al., No. 07UD05837* and to take possession of plaintiff's residence located on Bonniemae Way.

209.  In 2008, Karen Bass became Speaker of the California State Assembly. Karen Bass adopted the Policy of Nunez and committed acts in furtherance of the Conspiracy. Karen Bass had actual knowledge of the Policy and the Conspiracy and had power to stop the Policy and the Conspiracy but failed and neglected to do so.

210.  On August 6, 2008, Hogan filed a sham amended complaint in Superior Court in the matter of *McGee v. McGee et. al. No. 07UD0537*, on behalf of the property owner. Hogan had actual knowledge the allegations and factual contentions in the amended complaint were false.

211.  In October 22, 2008, County Sheriff John McGinniss adopted Craig and Blanas policy of refusing and neglecting to see that the federal and state civil rights statute and California Penal Code were faithfully enforced as it pertained to plaintiff. McGinnis began to execute the Policy and commit acts in furtherance of the Conspiracy.

212.  On August 12, 2008, Hogan, Link, Sacramento Delta Property Management, and defendants in this action worked in concert to deter by intimidation and threats plaintiff and Julia A. McGee who were parties and witnesses in Superior Court in the action entitled *McGee et. al. v. Seagraves et. al. No. 06AS05145* from attending said court by serving plaintiff and Julia McGee the sham amended complaint filed in the matter of *McGee  v. McGee No. 07UD05837* in Department 59 of

1    Superior Court during a mandatory settlement conference in the matter of 06AS05145. The

2    McGee's were intimidated and threatened.

3    213.    On September 3, 2008, judgment was entered in favor of Sora McGee's in the case entitled

4    *McGee v. McGee No. 07UD05837.* On September 9, 2008, plaintiff appealed the judgment. On

5    September 10, 2008, plaintiff filed a writ of mandate in Superior Court. The writ of mandate

6

7    stayed the writ of possession.

8    214.    On October 23, 2008, Hogan, Mark McGee, Thomas McGee, County, John McGuiness and

9    other defendants named in this complaint used intimidation by threats of violence and threats of

10   arrest to take possession of the property located on Bonniemae Way and the personal property

11   inside from plaintiff and Julia McGee. Defendants gave possession of the property to Mark

12

13   McGee, and Thomas McGee although neither Mark nor Thomas McGee had legal standing to

14   take possession of said property.

15   215.    Hogan, Sacramento Delta Property Management Inc., White, and other defendants conspired

16   to unlawfully take possession of the property located on Bonniemae Way, plaintiff's court files

17

18   and other personal property the day before the trial in the matter of *McGee et. al. v. Seagraves et.*

19   *al.* No. 06AS05145 to prevent plaintiff and Julia McGee from preparing for the trial scheduled on

20   October 24, 2008. Plaintiffs were prevented from fully preparing for trial.

21   216.    On December 29, 2009, Hogan, Mark McGee, Thomas McGee, Barbra McGee, Golden

22   Valley Financial, and others began to work in concert and use fraud perjury, forgery, and deceit to

23   file and prosecute the unlawful detainer action entitled *McGee v. McGee et. al. No. 09UD12194*

24

25   in Superior Court. Hogan and others filed said action while the issue of possession on the

26   property on Bonniemae Way was pending before the United States Supreme Court. The action

27   named Julia McGee and Javon McGee as defendants. Hogan filed the complaint in behalf of Sora

28

53
*McGee v. CA State Complaint*

McGee while having actual knowledge that the undisputed facts set out in Superior Court No. 07UD0537 clearly showed no landlord tenant relationship existed between Julia McGee and Javon McGee and Sora McGee.

217.    Hogan and other defendants conspired to obtain a judgment for unlawful detainer against Julia McGee and Javon McGee in favor of Sora McGee although Sora McGee did not have legal standing to file said action and the undisputed facts in the matter of 07UD05837 and No. 09UD12194 demonstrated that Sora McGee and Julia McGee and Javon McGee had not entered into a landlord tenant relationship.

218.    On September 23, 2010, plaintiff filed a fourth amended complaint in the action *McGee v. State of California et. al.,* The complaint named 153 defendants. The fourth amended complaint challenged the State of California's Policy of Discriminating Against African Americans in Law Enforcement Programs and Activities and alleged causes of actions pursuant to 42 USC §§ 1981, 1982, 1983, 1985, 1986, 2000a and  California Civil Code §§ 51 and 52. Additionally, many of the 153 defendants named in the fourth amended complaint have been listed above. Plaintiff also requested District Court enter an injunction restraining the defendants from continuing to obstruct justice in Superior Court to obtain judgments against plaintiff and from continuing to hold his property along with other requests.

219.    Schwarzenegger, Brown, Darrell Steinberg, and John A. Perez, were served the motions for TRO and amended complaints filed in *McGee v. State of California et. al.* Brown had actual knowledge that: (1) Hogan, Link, Mark McGee, Thomas McGee, Richard McGee, Barbra McGee, Golden Valley Financial Inc. were using fraud, perjury and deceit in  Superior Court in the cases 07UD05337, 09UD12194 and 10UD0886 to obtain judgments against plaintiff and his family; (2) County, City, MMDD, DiSalvo, Tiners, Richardson and others had used force,

intimidation, threats of violence, threats of arrest, to take and hold hundreds of thousands of dollars of plaintiff's property without his consent; and (3) Hogan and others were conspiring to take possession of plaintiff's residence on Bonniemae Way and steal plaintiff's personal property. Brown had the power to prevent Hogan and other persons from using fraud, perjury and deceit in Superior Court to obtain judgments against plaintiff; and power to prevent defendants from continuing to hold plaintiff's property, but refused and neglected to do so.

220.   Steinberg and Perez had actual knowledge that Schwarzenegger and Brown had: (1) adopted the Policy; (2) committed acts in furtherance of the Conspiracy; (3) maintained a criminal judgment against plaintiff to punish plaintiff for exercising and asserting his rights; and (4) refused to make MMDD and City return hundreds of thousands of dollars of plaintiff's personal property. Steinberg and Perez had the powered to prevent Schwarzenegger and Brown from continuing to execute the Policy and doing acts in furtherance of the Conspiracy, but refused and neglected to impeach Schwarzenegger and Brown in furtherance of the conspiracy set out above.

221.   On January 3, 2011, Brown became Governor of California. Brown adopted Wilson's, Davis' and Schwarzenegger's policies by refusing to see that the federal and state civil rights statutes and California Penal Code was faithfully executed pertaining to plaintiff. Brown had actual knowledge that County, City, MMDD, Hogan, White, and others had unlawfully taken possession of the properties located on Elk Grove Florin Road, Bruceville Road, Iris Crest Way, Bonniemae Way, and hundreds of thousands of dollars of plaintiff's personal property and continued to hold said property. Brown had a statutory duty to see that the property was returned to the McGee's. Brown had the power to see to it that the property was returned to McGee but refused and neglected to have the property return to McGee.

222. On March 15, 2010, Hogan worked in concert with Brown, Lockyear, County, McGuiness, and other to take possession of the property located on Bonniemae Way from plaintiff again and to give possession of the property and the personal property inside the residence to Mark McGee and Thomas McGee although Mark and Thomas McGee had no legal standing to take possession of said property from plaintiff.

223. In August of 2011, Richard McGee Jr., Hogan and other defendants began working in concert to use fraud and perjury to file the unlawful forcible entry and forcible detainer action in Superior Court. Richard McGee filed the unlawful forcible entry and forcible detainer action on behalf of Sora McGee although it was clear that Sora McGee had not been in possession of the property located on Bonniemae at any time after April 9, 2006 when plaintiff and his family took possession of the property. The action was entitled *McGee v. McGee et. al.* No. 10UD0886. Defendants obtained a judgment against plaintiff in favor of Sora McGee by use of fraud, perjury, and deceit.

224. On November 2011, Schwarzenegger, Brown, County, McGuiness, McGee, McGee, McGee, Sora McGee, and others took possession of plaintiff's residence located at 5617 Bonniemae Way and the personal property inside said residence and continue to hold the property to this date.

### Allegations in Support of Method of

### Carrying Out the Policy and the Conspiracy

225. "On August 31, 2013 at around 3:35 pm, plaintiff was driving a green 1995 Toyota Celica license number 3G0R095 on Consumnes River Blvd. just west of Bruceville Road with Cassandra Olague, when plaintiff notice SPD patrol car following them. The patrol car mentioned above stalked plaintiff for approximately one mile without turning on lights or making a traffic stop. Plaintiff drove into the Bridgeport Condominium Complex located on the 8200 block of

1   Center Parkway. Not less than two City Sacramento Police patrol cars followed them into the

2   Bridgeport Condominium Complex. Plaintiff parked the car in a parking space and opened the

3   door to get out of the car. Plaintiff turned around and saw not less than two guns point at his head.

4   Plaintiff heard a helicopter over his head. Plaintiff was terrified and feared for his life. SPD then

5

6   used threats with deadly weapons to steal, take, hold, detain, and arrest plaintiff and Olague, place

7   them in handcuffs and carried them to SPD patrol cars. While plaintiff was sitting in the back seat

8   of the patrol car SPD asked plaintiff if he was on probation or parole. Plaintiff told him that he

9   was neither on probation or parole. SPD then searched the car without plaintiff's permission.

10

11   Plaintiff was detained in the SPD patrol cars for a time before plaintiff was released. The above

12   mentioned actions were committed without a warrant or cause, and served no lawful

13   governmental purpose.

14   226.    SPD was engaged in racial profiling when it used assault with deadly weapons to steal

15   plaintiff's body without cause or a warrant. City, Officer Morgado, Francine Tournor, Kevin

16   Johnson, Angelique Ashby, Allen Warren, Hanson, Fong, Cohn, and McCarthy are covering up

17
    the crimes committed against plaintiff by SPD and its officers. The City Council and City
18
19   officials sent plaintiff letters to plaintiff claiming there was no misconduct on behalf of SPD on

20   August 31, 2013. City and SPD refused and neglected to make a crime report or investigate the

21   conduct of SPD to execute City Policy of race discrimination.

22
    227.    The actions of SPD instilled fear in plaintiff and damaged plaintiff's reputation in the
23
    community. Plaintiff does not feel safe driving when he sees SPD patrol cars.
24

25   228.    On or about October 15 2013, Sergeant Morgado covered up the above-mentioned crimes

26   committed against plaintiff by telling plaintiff the police officers were following Policy of SPD

27

28

1    when they committed the above mentioned actions. Morgado also told plaintiff that the officers

2    did not use excessive force when they used deadly weapons to steal plaintiff's body.

3    229.    Plaintiff asked Morgado if he could make a formal complaint with SPD Internal Affairs

4    Department. Morgado threatened plaintiff implying that if could be arrested for perjury. When

5    plaintiff insisted on making a formal complaint, Morgado became visually upset and left the

6    room. Plaintiff was afraid to stay at Internal Affairs for fear of retaliation. After waiting in the

7    room for several minutes plaintiff got ready to leave the building because he was in fear. Another

8    SPD officer came into the room to assure plaintiff he was safe. Morgado came back into the room

9    with a complaint form typed on a document approximately 8.5 by 5 inches. Morgado had plaintiff

10   sign the complaint. Plaintiff was so intimidated that he was sweating and his hands were shaking

11   while he was signing the complaint. When plaintiff gave a recorded statement, Morgado

12   interrogated plaintiff as if plaintiff was a suspect. Sergeant Morgado then refused to give plaintiff

13   a copy of the form that plaintiff had signed. Morgado told plaintiff that plaintiff would not be told

14   the outcome of the complaint.

230.    Johnson, Ashby, Warren, Hanson, Fong, Cohn, and McCarthy have actual knowledge that

SPD: stalked plaintiff on the streets; aimed guns at plaintiff's head; arrested plaintiff; searched

plaintiff's person; searched plaintiff's property and moved plaintiff into SPD patrol cars without a

warrant, cause or plaintiff's consent. City Council also has actual knowledge that plaintiff feels

intimidated while driving on the streets of the City of Sacramento. City has the power to punish

the officers involved in the warrantless arrest and insure plaintiff that SPD would not repeat the

action set out above, but refuse and neglect to insure plaintiff feels safe driving on the streets of

Sacramento to further execute the Policy.

231. Johnson, Ashby, Warren, Hanson, Fong, Cohn, Pannell, and McCarthy have actual knowledge that City, MMDD and other persons were conspiring to: prevent plaintiff from operating VHSBG in City because of his race, and are holding hundreds of thousands of dollars of plaintiff's property. Defendants have the power to prevent City from preventing plaintiff from operating VHSBG and to prevent MMDD and SPD from continuing to hold hundreds of thousands of dollars of plaintiff's property but have refused and neglected to do so in furtherance of the Conspiracy. City Council worked in concert with Tournour and Morgado to cover up the crimes committed against plaintiff.

232. On March 15, 2014, at approximately 10:07 p.m. plaintiff was leaving his property located at 8276 Center Parkway #125. Plaintiff began to walk on the sidewalk toward the parking lot. James Goodnight and several other persons were blocking the side walk. Goodnight stopped plaintiff to tell plaintiff that his friends had just been shot dead on Mack Road. Plaintiff cut the conversation and continued to proceed to his car. Goodnight became upset at plaintiff because plaintiff showed no emotion for his friends.

233. Plaintiff attempted to walk to his car but Goodnight placed his self directly in front of plaintiff and blocked plaintiff's path to the parking lot. Goodnight was drunk. Plaintiff could not turn or walk to his right because the swimming pool fence was directly to his right. Plaintiff told Goodnight that he was interfering in his personal space and advised Goodnight that plaintiff was feeling threatened by Goodnight standing in his space. Goodnight was standing close enough to plaintiff that plaintiff could feel his body. Plaintiff politely asked Goodnight to stop standing in front of him. Goodnight put his fingers to his chin and pretended to be thinking. While Goodnight was rubbing his chin he stated, "Umm... let me see." And paused for a moment and said, "fuck you!"

234. Plaintiff was intimidated and feared for his safety. Plaintiff attempted to walk towards his left. Goodnight moved to block plaintiff. Plaintiff was in fear for his safety and considered using physical force to protect himself from Goodnight. Plaintiff also feared that if he used force to protect himself he would be arrested and prosecuted for protecting himself from a white man. Goodnight was staring plaintiff in his eye in a threatening manner. Plaintiff warned Goodnight that he was going to call the police. After several minutes Goodnight let plaintiff pass. Plaintiff turned his back and began walking to his car. Goodnight continued to follow plaintiff threatening violence. Plaintiff felt fear because Goodnight was following him. When plaintiff turned around Goodnight began saying, "you want some of this?" While he pounded his fist on his bare chest. Goodnight kept threatening plaintiff with violence for several minutes until his friend pulled him back.

235. Later, March 15, 2014, plaintiff called SPD for protection. Plaintiff made a 911 call and explained to the dispatcher that Goodnight had threatened plaintiff with violence and that Goodnight was blocking the sidewalk in front of unit #125 preventing plaintiff from returning. About an hour later three SPD officers arrived in the parking lot. Officer Lopez saw that Goodnight was white and plaintiff was African American and decided to take sides with Goodnight. Plaintiff began to tell Lopez and the other officer the events detailed above, and other criminal acts Goodnight had committed, but before plaintiff could get in to the details, Lopez ordered plaintiff not to cut him off. Lopez said, "I am not going to get into a dispute between two neighbors." SPD and Lopez refused to investigate McGee's 911 calls and refused to make any report of the crime.

236. Plaintiff was going to report to SPD that Goodnight is a menace to society. Goodnight has twice snatched open the security door of plaintiff's unit while threatening violence on the

1    occupants. On both occasions Goodnight has caused physical injury to the occupants trying to

2    shut the door. Goodnight has locked Jefferson McGee II into his garage for approximately an

3    hour. Goodnight has tackled Jefferson McGee II and started pumping on him in a sexual manner.

4    Goodnight has used force to take Jefferson McGee II cell phone and hold it for hours. Goodnight

5

6    has thrown a beer can at Reggie Taylor splitting his head open, and leaving a permanent scar.

7    Goodnight blocks the side walk every night while drinking malt liquor.

8    237.    Plaintiff was also going to report that on December 29, 2013 plaintiff arrived in the parking

9    lot and witnessed Goodnight physically attacking Jefferson McGee II. Goodnight's friends had to

10    prevent the attack. Plaintiff attempted to report the events listed above to SPD but they refused to

11    listen because of plaintiff's race.

12

13    238.    After SPD told plaintiff they were not going to make a report. Plaintiff told SPD Goodnight

14    was always standing on the sidewalk blocking his entrance to his unit. Plaintiff told Lopez and the

15    other officers he was afraid to walk past Goodnight to get to his unit. Lopez told plaintiff to,

16    "Walk another way." Plaintiff has the right as a tenant to enjoy common areas of Bridgeport

17    Condominium Complex. SPD and Goodnight are conspiring to deprive plaintiff of use of the

18    property without due process. Plaintiff is being prevented from using the route to get to his unit

19    property without due process. Plaintiff is being prevented from using the route to get to his unit

20    which he had used for over two years. Since March 15, 2014 plaintiff has use that route only

21    once.

22

23

24    239.    On Sunday March 23, 2014, at around 7:00 p.m. Goodnight incited by SPD's refusal to make

25    a crime report, began patrolling the sidewalk in front of plaintiff's unit with a teaser strapped on

26    his hip. Plaintiff felt intimidate. SPD is preventing plaintiff from the full and equal enjoyment of

27

28

the bundle of rights plaintiff is entitled to pertaining to his agreement to rent unit #125, as are enjoyed by Goodnight. Plaintiff is African American Goodnight is White.

## Allegations of Damages

240.    Defendants' actions as set out above have hindered, deterred, and prevented plaintiff from operating his business McGee & Associates, Flintlock Bar and Grill, and Valley Hi Sports Bar & Grill for approximately 21 years. Defendants' actions have prevented plaintiff from enjoying the use of his property. Defendants' actions have harassed plaintiff at places of public accommodations on the streets of Sacramento County and other places. Defendants are depriving plaintiff of the free use of public accommodations and other places in County and City as is enjoyed by white citizens. Plaintiff has been prevented from accumulating capital, and making investments. Plaintiff has been denied the opportunity to earn billions of dollars in income for over a period of 21 years.

241.    Defendants are maintaining judgments obtained through fraud, perjury and deceit against plaintiff as a matter of policy and in furtherance of the Conspiracy. The fraudulently obtained judgments are in writing and entered in to the public record. Defendants have posted writs of possession and the Sheriff's notice to vacate on the property located on Elk Grove-Florin Road, Bruceville Road, Iris Crest Way, and Bonniemae Way. Defendants are communicating to the public that plaintiff has been lawfully evicted from said properties. The judgments are having severe impact on plaintiff's business reputation and are hindering plaintiff from pursuing his business, employment, and political objectives and preventing him from earning an income and saving for retirement. Defendants' actions have exposed plaintiff to scorn, contempt, and ridicule. Defendant's actions as set out in this case are preventing plaintiff from taking advantage of

properties for sale or lease, employment opportunities, business opportunity, political opportunities, and the privilege of being a citizen of the United States.

242.    The typical bank, landlord, business or voter would not lend, rent, hire, patronize, invest, or give their vote to plaintiff based on the judgments set out above.

243.    Defendants' actions as set out above have interfered with plaintiff's relationships with his mother and siblings. Plaintiff's mother is 85 years old. As a direct result of defendants action set out in the complaint plaintiff has been estranged from his mother for approximately seven years.

244.    Defendants' actions as set out above caused plaintiff and his late wife Julia McGee severe emotional distress. Plaintiff and Julia McGee were homeless, and forced out of two residences and businesses and lost property and forced to live in hotels and sleep on the floor. Defendants have taken property that took the McGee's 27 years to accumulate. The stress upon Julia McGee caused depression which contributed to her untimely death.

245.    Plaintiff has complained of defendants' actions to this court by filing over ten complaints alleging the events set out above. Defendants had actual knowledge that the State of California her officers, municipalities and law enforcement officials were subjects to judgment in District Court in the following matters: *McGee v. Craig et. al.* $1,487,130,991.48; *McGee v. Schwarzenegger et. al.* $14,574,779,991.00; *McGee v. CA State Senate et. al.* $145,747,779,991.00; and *McGee v. State of California et. al.* No. $562,000,000.00. The potential damages have not deterred defendants from continuing to implement, promulgate, and execute a policy of Discriminating Against African Americans in Law Enforcement Programs and Activities and from continuing to participate in the vast racially motivated conspiracy to deprive plaintiff of his civil rights. Defendants' policies and conspiracy has incited other persons to commit more crimes against plaintiff.

246.     As a direct result of defendants' actions plaintiff suffered emotional distress, mental anguish, humiliation, depression, fear, anxiety, public scorn, ridicule, embarrassment, damage to his business reputation and loss of income. Plaintiff has been diagnosed with Post Traumatic Stress Disorder, as a result of defendants' actions.

247.     Defendants' actions as set out above were malicious, callous and done with deliberate indifference to plaintiff's rights secured by the Fourteenth Amendment to the United States Constitution, Title 42 USC §§ 1981, 1982, 2000a, and California Civil Code § 51. The conduct of defendants as set forth above is conscious shocking.

Plaintiff re-alleges paragraphs 1 through 249 of this complaint as paragraphs 1 through 246 of Count One through Eight and hereby incorporates them though fully set forth herein.

## CAUSES OF ACTION

## COUNT ONE

### Title 42 USC §1981

248.     Each defendant listed in this complaint deprived plaintiff of the same right in the State of California to make and enforce contracts, to sue parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as are enjoyed by white citizens and subjected plaintiff to unlike punishments, pains, penalties, taxes and exactions of every kind when they committed the wrongs set out above.

249.     Each defendant is liable to plaintiff for damages and other relief under Title 42 USC §1981.

## COUNT TWO

### Title 42 USC §1982

250.    Each defendant deprived plaintiff of his rights to inherit, purchase, lease, sell, hold, and convey real and personal property the same as white citizens when they conspired to commit the acts in furtherance of the Conspiracy; and therefore are liable to plaintiff under Title 42 USC §1982.

## COUNT THREE

### Title 42 USC §1983

251.    Each defendant was acting under the color, usages, ordinances, statutes, and customs of the laws of the State of California and pursuant to the Policy as adopted, implemented, maintained and executed by the State of California, County, City, Elk Grove, Citrus Heights, EGUSD, and SRPD when they conspired or aided and incited other persons to violate plaintiff's rights secured by the First, Second, Fourth, Fifth, Sixth, and Fourteenth Amendment to the United States Constitution Title 42 USC §§ 1981, 1982, and 2000. Therefore each defendant is liable to plaintiff under Title 42 USC §1983.

## COUNT FOUR

### Title 42 USC §1985

252.    Each defendant listed above: (1) entered into the Conspiracy; (2) deprived plaintiff of equal protection of the laws and equal privileges and immunities under the laws; and (3) committed an act in furtherance of the Conspiracy. Plaintiff was injured in his person and property and deprived of his rights secured by Title 42 USC §§1981, 1982, and 2000 and deprived of his privileges of a citizen of the United States as a result of the Conspiracy. Each defendant is liable to plaintiff under Title 42 USC §1985.

## COUNT FIVE

1

Title 42 USC §1986

2    253.    Each defendant had actual knowledge that the wrongs set out above were about to be

3    committed, and had the power to prevent said wrongs from being committed, but refused and

4
     neglected to prevent said wrongs from being committed. Therefore, each defendant is liable to
5
6    plaintiff under Title 42 USC §1986.

7                                           **COUNT SIX**

8                                       Title 42 USC §2000

9    254.    Each defendant named in this complaint conspired to deprive plaintiff of the full and equal

10
     enjoyment of: McGee & Associates; Little League Baseball Inc.; Florin Little League Baseball
11
12   Inc.; the sports arena and school grounds belonging to EGUSD; the sports arena and parks

13   belonging to SRPD; the baseball stadium at Sacramento Army Depot; Doubletree/Hilton Hotel;

14   Flintlocks Bar and Grill; Valley Hi Sports Bar and Grill; the streets of Sacramento County and

15   other places as are enjoyed by white citizens and therefore are liable to plaintiff under Title 42

16   USC §2000a.

17
     255.    Each defendant conspired to discriminate against plaintiff on the grounds of race and color in
18
19   law enforcement programs and activities receiving federal financial assistance and excluded

20   plaintiff from participating in Little League Baseball Inc. because of his race and solely on

21   account that plaintiff is African American. Therefore the State of California is not immune from

22   damages in this action under Title 42 USC §2000d-7.

23
                                           **COUNT SEVEN**
24
25                                    California Civil Code §51

26

27

28

256.    Each defendant named in this complaint were operating in the jurisdiction of the State of California when they denied plaintiff his right to be free from any violence, or intimidation by threats of violence, committed against his person or property because of his race and color, when they use violence, intimidation by threats of violence against plaintiff on account of his race at the following business establishments: McGee & Associates; LLB; FLLB; Flintlock's Bar & Grill; VHSBG; Doubletree/Hilton Hotel; Ford Motor Credit and other establishments. Each defendants listed in this action is liable to plaintiff under California Civil Code §51.

## COUNT EIGHT

California Civil Code §52

257.    Each defendant named in this action denied, aided, incited and conspired to deny plaintiff rights provided by §51. Therefore each defendant is liable to plaintiff under California Civil Code §52.

## PRAYER

WHEREFORE, plaintiff prays judgment against defendants jointly and severally as follows:

(a) Granting plaintiff's request to allow the United States Attorney General to intervene in this action.

(b) Declaring defendants have engaged in the past and continuing pattern and practice of discriminating against plaintiff and other African Americans on the basis of race in law enforcement programs and activities receiving federal and state financial assistance in violation of the 1964 Civil Rights Act; and the regulations promulgated there under, and the Equal Protection and Due Process clauses of the Fourteenth Amendment to the United States Constitution;

(c) Declaring defendants have deprived plaintiff of his rights under Title 42 USC §§ 1981, 1982, 2000 and California Civil Code 51.

1. For actual damages to be awarded to Jefferson A. McGee in the amount of $2,000,000,000.00;

2. For statutory damages to be awarded Jefferson A. McGee in the amount of $2,000,000,000.00;

3. For punitive damages to be awarded Jefferson A. McGee in the amount of $6,000,000,000.00;

4. For three times the actual damages be awarded to Jefferson A. McGee pursuant to CA Civ. Code 52 in the amount of $6,000,000,000.00;

5. Attorney fees pursuant to Title 42 USC §2000 to be determined and any further relief deemed by this Court;

6. For a temporary restraining order, a preliminary and permanent injunction enjoining defendants and each of them and their agents, servants, employees, and all persons acting in concert with them from continuing to:

a. refuse to take crime reports from plaintiff,

b. refuse to investigate crimes being committed against plaintiff,

c. refuse to arrest and investigate people who commit crimes against plaintiff;

d. maintain a policy that allows California, County, City, Elk Grove, Citrus Heights law enforcement officers to profile plaintiff while driving or walking on the public roads and highways, intimidate plaintiff by stalking him in their patrol cars, aiming guns at plaintiff, searching plaintiff's vehicles and persons, placing plaintiff in handcuffs, and moving plaintiff from one place to another without a warrant or probable cause or plaintiff's consent;

e. allow private citizens to use fraud, perjury and forgery to obtain judgments in the Superior Court for the purpose of taking plaintiff's property;

1    f. refuse and neglect to investigate, arrest, and prosecute SPD officers who aimed guns at

2    plaintiff's head, searched plaintiff's car and person without a warrant or probable cause and arrested

3    plaintiff without a warrant or cause on August 31, 2013 on the 8200 block of Center Parkway;

4
5    g. hold possessions of the property locate at 9412 Elk Grove Florin Road, 7917 Bruceville

6    Road, 8553 Iris Crest Way, 5617 Bonniemae Way and the personal property plaintiff left in the

7    properties;

8    h. maintain judgments in the public record and refuse to enter judgments in plaintiff's favor in

9    the following cases: *McGee v. McGee et. al.,* No. 10UD08668; *McGee v. McGee et. al.,* No.

10   09UD0121; *McGee v. McGee et. al.,* No. 07UD05837; *McGee et. al. v. Seagraves et. al.,* No.

11
12   06AS05145; *Seagraves v. McGee et. al.,* No. 06UD01661; *McGee v. MMDD et. al.* No.

13   05AS05330; *MMDD v. McGee et. al.,* No. 05UD06252; *MMDD v. McGee et.al.* No. 05UD0155;

14   *People v. McGee* No. 03F11198; *McGee v. Hildebrand* No. ***; *Hildebrand v. McGee et. al.,* No.

15   00UD9860; *Hildebrand v. McGee et. al.,* No. C-99109; *People v. McGee et. al.* No. 98M0874;

16   and/or any other judgment entered against plaintiff as a result of the Policy and the Conspiracy;

17
18   i. refuse to investigate, arrest and prosecute the person for committing crimes in furtherance

19   of the Conspiracy;

20   j. interfere with McGee's rights to lease the properties located at: 9412 Elk Grove Florin Road

21   Elk Grove, California 95624, 7917 Bruceville Road Sacramento, California 95823, and 8553 Iris

22   Crest Way Elk Grove, California 95624;

23
24   k. use intimidation, threats of violence, violence, threats of arrest, and arrest to prevent

25   McGee from participating in LLB, FLLB and discharging his duties as the elected secretary of FLLB;

26   l. maintain records of the false arrest of plaintiff;

27
28

m. hinder and deter Jefferson McGee from operating Valley Hi Sports Bar & Grill at 7917 Bruceville Road Sacramento, California with a liquor license with conditions identical to the conditions placed on James Stinson's liquor license;

n. implement, maintain, and promulgate a policy of Discriminating Against African Americans in Law Enforcement Programs and Activities;

o. participate in the vast racially motivated conspiracy set out above;

p. hold plaintiff's .22 caliber Beretta handgun;

q. cause plaintiff fear while driving on the streets of Sacramento County;

r. aid persons and businesses in the State of California to collect debts from plaintiff;

s. finance companies to trespass on plaintiff's property and using violence and threats of violence, arrest and threats of arrest to collect debts from plaintiff and other persons without a court order to do so;

Plaintiff request that this Court grant plaintiff leave to amend to add more facts and/or defendants at a later date.

Dated: April 1, 2014



Jefferson A. McGee, Attorney Pro Se

1

## **VERIFICATION**

2

3      I am the plaintiff in this action. I have read the foregoing complaint and the matters stated in it

4    are true of my knowledge.

5

6      I declare under penalty of perjury under the laws of the State of California that the foregoing

7    is true and correct.

8

9

10   Date: April 1, 2014                          

11

12                                               Jefferson A. McGee,

13

                                                 Attorney Pro Se

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28