UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERSON A. MCGEE, | No. 2:14-cv-0823-JAM-KJN PS |
| Plaintiff, | |
| v. | ORDER AND |
| STATE OF CALIFORNIA, et al., | FINDINGS AND RECOMMENDATIONS |
| Defendants. | |

Plaintiff Jefferson A. McGee commenced this civil rights action on April 2, 2014. (ECF No. 1.)[1] Thereafter, on May 7, 2014, plaintiff filed a motion for a temporary restraining order and preliminary injunction. (ECF No. 11.) That same day, plaintiff also filed a motion to permit the United States Attorney General to intervene in this action and have the action certified as being of general public importance. (ECF No. 12.) By virtue of this order and findings and recommendations, the court recommends that plaintiff's motion for a temporary restraining order be denied, plaintiff's motion to permit intervention by the United States Attorney General be denied, the action be dismissed upon the terms outlined below, and that plaintiff's motion for a preliminary injunction be denied without prejudice as moot.

////

---

[1] This action proceeds before the undersigned pursuant to E.D. Cal. L.R. 302(c)(21) and 28 U.S.C. § 636(b)(1).

1

Motion for a TRO

A temporary restraining order ("TRO"), as a form of injunctive relief, is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Niu v. United States, 821 F. Supp. 2d 1164, 1168 (C.D. Cal. 2011) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)). The court may grant a TRO where the moving party is "likely to succeed on the merits,…likely to suffer irreparable harm in the absence of preliminary relief,…the balance of equities tips in his [or her] favor, and…an injunction is in the public interest." Winter, 555 U.S. at 20; see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (analysis for temporary restraining orders and preliminary injunctions is "substantially identical").

"Under the sliding scale approach…the elements…are balanced, so that a stronger showing of one element may offset a weaker showing of another." Pimentel v. Dreyfus, 670 F.3d 1096, 1105 (9th Cir. 2012) (citations and internal quotation marks omitted); see also Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (preliminary injunction appropriate when a moving party demonstrates that "serious questions going to the merits were raised and the balance of hardships tips sharply in the [moving party's] favor," assuming other Winter elements are also met). However, "'at an irreducible minimum, the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation.'" Guzman v. Shewry, 552 F.3d 941, 948 (9th Cir. 2008) (quoting Dep't of Parks & Recreation v. Bazaar Del Mundo, Inc., 448 F.3d 1118, 1124 (9th Cir. 2006)). Where a party has not shown likelihood of success on the merits, or at least the existence of serious questions going to the merits, the court need not address the remaining Winter elements. See Pimentel, 670 F.3d at 1111.

As an initial matter, the court notes that plaintiff has failed to fully comply with Local Rule 231, which governs the issuance of a TRO. That rule requires that "the following documents [be] provided to the Court":

(1) a complaint;

(2) a motion for temporary restraining order;

1        (3) a brief on all relevant legal issues presented by the motion;

2        (4) an affidavit in support of the existence of an irreparable injury;

3        (5) an affidavit detailing the notice or efforts to effect notice to the affected parties or

4              counsel or showing good cause why notice should not be given…;

5        (6) a proposed temporary restraining order with a provision for a bond…;

6        (7) a proposed order with blanks for fixing the time and date for hearing a motion for

7              preliminary injunction, the date for the filing of responsive papers, the amount of the

8              bond, if any, and the date and hour of issuance…; and

9        (8) in all instances in which a temporary restraining order is requested <u>ex parte</u>, the

10           proposed order shall further notify the affected party of the right to apply to the Court

11           for modification or dissolution on two (2) days' notice or such shorter notice as the

12           Court may allow….

13  E.D. Cal. L.R. 231(c).  Here, at a minimum, plaintiff has not filed the proposed orders

14  contemplated by Local Rule 231(c)(6)-(7).  Moreover, although plaintiff submitted various proofs

15  of service of the TRO papers (ECF No. 14), the court has grave concerns as to whether plaintiff

16  provided proper notice of the TRO application to at least some of the defendants.  By way of

17  example, plaintiff ostensibly served several former California Governors (including Arnold

18  Schwarzenegger, Gray Davis, and Pete Wilson) at the address of the current California Governor.

19  (<u>See</u> ECF No. 14 at 9-12.)  "Except in the most extraordinary of circumstances, no temporary

20  restraining order shall be granted in the absence of actual notice to the affected party and/or

21  counsel, by telephone or other means, or a sufficient showing of efforts made to provide notice."

22  E.D. Cal. L.R. 231(a).  Nonetheless, in light of plaintiff's *pro se* status, the court considers the

23  merits of plaintiff's motion for a TRO.

24        In this case, plaintiff's 75-page complaint names approximately 69 defendants, including,

25  *inter alia*, the State of California; the California Governor (as well as former California

26  Governors); the California Attorney General (as well as former California Attorney Generals); the

27  California State Senate; the California State Assembly; certain individual members of the

28  California legislature; the County of Sacramento (as well as individual members of the

3

Sacramento County Board of Supervisors); various cities in the Sacramento metropolitan area (including individual city council members); several sheriffs, sheriff deputies, and prosecutors; the Elk Grove Unified School District; the Southgate Recreation and Park District; certain creditors and/or property managers; a hotel; a few civic organizations; and multiple law firms. (See Complaint, ECF No. 1 ["Compl."] ¶¶ 4-15.)

Plaintiff alleges that each of the defendants "has used law enforcement programs and activities receiving financial assistance from the United States Government to discriminate against plaintiff on the grounds of his race and solely on account that plaintiff is African American." (Compl. ¶ 17.) Plaintiff broadly claims that:

> government officials and some private citizens have participated in a vast racially motivated conspiracy to violate plaintiff's and other persons [sic] rights, including conspiring, or aiding or inciting others, to commit against plaintiff and other persons: attempted murder; kidnap; torture; assault with a deadly weapon; assault; battery; breaking and entering into plaintiff's property; obstruction of justice in the federal and state courts; perjury; forgery; unlawful sexual conduct; and unlawful search and seizure of plaintiff's property causing plaintiff to lose income.

(Compl. ¶ 1.) Plaintiff brings claims against each defendant for violation of 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, & 2000, as well as violation of Cal. Civ. Code §§ 51 & 52. (Compl. ¶¶ 248-257.) These claims are apparently based on numerous different incidents that allegedly took place from approximately 1993-2014, including, but not limited to, exclusion from participation in the affairs of Florin Little League Baseball, various hostile encounters with different city and county law enforcement agencies, plaintiff's eviction from multiple properties through unlawful detainer actions, certain debt collection activities undertaken against plaintiff, the prosecution of criminal actions against plaintiff, interference with plaintiff's businesses and liquor licenses for those businesses, an incident of racial discrimination at a hotel, and failure to protect plaintiff from a hostile neighbor. (See generally Compl.) Plaintiff's complaint seeks declaratory relief, various forms of injunctive relief, as well as different types of damages, including $2,000,000,000.00 in actual damages, $2,000,000,000.00 in statutory damages, and $6,000,000,000.00 in punitive damages. (Compl. at 67-70.)

////

In his motion for a TRO, plaintiff requests numerous forms of relief, including that defendants be prohibited from refusing to investigate and prosecute crimes committed against plaintiff; searching, detaining, or harassing plaintiff; withholding and interfering with plaintiff's real and personal property; refusing to enter judgments in plaintiff's favor in various unlawful detainer and other actions; maintaining false criminal records; interfering with plaintiff's liquor license for his business; withholding plaintiff's handgun; implementing a general policy and conspiracy to discriminate against African Americans; and using government entities and public money to break the laws of the United States. (ECF No. 11 at 1-4.)

In light of the conclusory, and at times fanciful and delusional, allegations in plaintiff's complaint and in the motion for a TRO, the court finds that plaintiff has not demonstrated a likelihood of success on the merits, or even the existence of serious questions going to the merits. Furthermore, as discussed below, it appears that many of plaintiff's claims in this action are also barred by the doctrine of claim preclusion and res judicata. Because plaintiff has not shown a likelihood of success on the merits or the existence of serious questions going to the merits, the court declines to address the remaining Winter elements, and recommends that plaintiff's motion for a TRO be denied.

<u>Motion for Intervention by the United States Attorney General</u>

Plaintiff requests the court to permit the United States Attorney General to intervene in this action and have this case certified as being of general public importance pursuant to 42 U.S.C. § 2000a-3. (ECF No. 12.) That statute provides, in part, that:

> Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a-2 of this title, a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved and, upon timely application, *the court may, in its discretion, permit the Attorney General to intervene in such civil action if he certifies that the case is of general public importance.*

42 U.S.C. § 2000a-3(a) (emphasis added). On its face, the statute does not permit plaintiff to unilaterally bring the Attorney General into the action, and plaintiff offers no legal authority to suggest otherwise. To be sure, the statute permits the *Attorney General* to file an application to

5

intervene if he certifies that the case is of general public importance, but that has not occurred in this case. Accordingly, the court recommends that plaintiff's motion to permit intervention by the Attorney General be denied.

### Improper Joinder of Defendants

After reviewing plaintiff's complaint, the court further concludes that plaintiff improperly joined defendants in violation of Federal Rule of Civil Procedure 20(a)(2). Rule 20(a)(2) provides that:

> Persons…may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

Even though plaintiff asserts in conclusory fashion that all defendants acted as part of a vast racially motivated conspiracy, the above-mentioned incidents in plaintiff's complaint actually implicate different groups of defendants (from different governmental and private entities), and involve different events, different types of acts, different times, and different subject matter. As such, plaintiff has improperly joined defendants in this action. Thus, the court concludes that plaintiff should only be permitted to proceed in this action against the defendants involved in the first incident/occurrence, or series of related incidents/occurrences, alleged in the complaint – in this case, plaintiff's exclusion from participation in the affairs of Florin Little League Baseball. The court recommends that the remaining defendants and claims be dismissed without prejudice for improper joinder. See Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.")

### Claims Concerning Plaintiff's Exclusion From Participation In Florin Little League Baseball

Plaintiff's claims concerning his alleged exclusion from participation in the affairs of Florin Little League Baseball involve the following named defendants – Florin Little League Baseball Inc. ("FLLB"); Little League Baseball Inc.; Elk Grove Unified School District; and

1   Southgate Recreation and Park District.  Plaintiff's complaint primarily alleges that, on various
2   occasions between December 1993 and June 1998, he was precluded from serving as a baseball
3   team manager for FLLB, was prevented from participating at FLLB board of directors meetings
4   despite his apparent election to that board, was refused the right to be a candidate or to vote in
5   FLLB elections unless he paid a fee that white members were not required to pay, was the subject
6   of racist remarks and derogatory statements by other members of the FLLB board of directors,
7   and was threatened with violence and arrest by others involved with the FLLB on account of
8   plaintiff's race.  According to plaintiff, FLLB operated its program on premises owned and
9   operated by the Elk Grove Unified School District and the Southgate Recreation and Park
10  District, which had actual knowledge of these alleged violations of plaintiff's rights, but did
11  nothing to prevent them.  (Compl. ¶¶ 25-77.)

12          The court finds that plaintiff's claims related to his alleged exclusion from participation in
13  the affairs of FLLB are barred by the doctrine of claim preclusion.  Claim preclusion "bars
14  litigation in a subsequent action of any claims that were raised or could have been raised in the
15  prior action...The doctrine is applicable whenever there is (1) an identity of claims, (2) a final
16  judgment on the merits, and (3) identity or privity between parties."  Owens v. Kaiser Foundation
17  Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001) (internal citations and quotation marks
18  omitted).  The United States Supreme Court has observed that a federal district court may *sua*
19  *sponte* raise the issue of claim or issue preclusion under certain circumstances.  "Most notably, if
20  a court is on notice that it has previously decided the issue presented, the court may dismiss the
21  action *sua sponte*, even though the defense has not been raised.  This result is fully consistent
22  with the policies underlying res judicata: it is not based solely on the defendant's interest in
23  avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary
24  judicial waste."  Arizona v. California, 530 U.S. 392, 412 (2000).

25          Here, plaintiff's present complaint expressly references the "188-page complaint" that
26  plaintiff previously filed in this court in a 1998 action, McGee et al. v. Craig et al., 2:98-cv-1026-
27  FCD-PAN (E.D. Cal.), which plaintiff alleges "detailed a vast racially motivated conspiracy to
28  violate plaintiff's federal constitutional rights."  (Compl. ¶¶ 23, 77.)  Plaintiff also specifically

7

requests, in a separately-filed request for judicial notice, that the court in this case take judicial notice pursuant to Federal Rule of Evidence 201 of various cases that plaintiff previously filed in, or removed to, this court, including McGee et al. v. Craig et al., 2:98-cv-1026-FCD-PAN (E.D. Cal.). (ECF No. 13.)  Thus, the court finds it appropriate to address the issue of claim preclusion *sua sponte*.

In this case, the claims in both the 1998 action and the present action (as narrowed) arise from the same transactional nucleus of facts concerning plaintiff's exclusion from participation in the affairs of FLLB. See Owens, 244 F.3d at 714 ("The central criterion in determining whether there is an identity of claims between the first and second adjudications is whether the two suits arise out of the same transactional nucleus of facts.").  Even if plaintiff's present complaint could be construed as asserting claims under different or additional statutes, these claims are simply new legal theories arising from the same transactional nucleus of facts and could have been raised in the prior action. Id. at 713-14.  Furthermore, both actions involve the same parties (FLLB and related entities) and plaintiff's claims against those parties were dismissed without leave to amend in the prior action. See McGee et al. v. Craig et al., 2:98-cv-1026-FCD-PAN (E.D. Cal.), ECF Nos. 182, 183.

Accordingly, the court finds that plaintiff's claims related to his alleged exclusion from participation in the affairs of FLLB in this action are barred by the doctrine of claim preclusion and should be dismissed with prejudice.

As noted above, the court recommends that the remaining claims and defendants be dismissed without prejudice for improper joinder.  Nevertheless, plaintiff is advised to carefully review Federal Rule of Civil Procedure 11 and related case law prior to reasserting such claims in any future actions.  Even though the court does not decide the issue here, it appears that many of plaintiff's other claims in the present complaint may likewise be barred by principles of claim preclusion and res judicata in light of the prior actions that plaintiff filed in this court, referenced in both plaintiff's present complaint and his request for judicial notice. (ECF Nos. 1, 13.) Additionally, at least some if not all of these claims, which involve events many years in the past, may well be time barred under the applicable statutes of limitation.  Although plaintiff is

proceeding without counsel, plaintiff has now been put on notice of these issues by this order and findings and recommendations. *Plaintiff is cautioned that any future assertion of claims barred by principles of claim preclusion and res judicata, or claims barred by the applicable statute of limitations, may result in the imposition of Rule 11 sanctions, the declaration of plaintiff as a vexatious litigant, and/or the imposition of any other appropriate sanctions.*

In light of the above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for a TRO (ECF No. 11) be denied.
2. Plaintiff's motion to permit intervention by the United States Attorney General (ECF No. 12) be denied.
3. Plaintiff's claims against defendants Florin Little League Baseball Inc.; Little League Baseball Inc.; Elk Grove Unified School District; and Southgate Recreation and Park District be dismissed with prejudice.
4. The remaining claims and defendants be dismissed without prejudice for improper joinder.
5. Plaintiff's motion for a preliminary injunction be denied without prejudice as moot.

In light of these recommendations, IT IS ALSO ORDERED that:

1. All scheduled dates and deadlines in this action are vacated.
2. All pleading, motion practice, and discovery in this action are stayed pending resolution of the findings and recommendations by the district judge. <u>Other than objections to the findings and recommendations or non-frivolous motions seeking emergency relief</u>, the court will not entertain further motions or amended pleadings until the findings and recommendations are resolved by the district judge.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the

objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED AND RECOMMENDED.

Dated: May 15, 2014

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE